**JOHNSON et al. v. UNITED STATES.**

No. 13664.

United States Court of Appeals
Ninth Circuit.

Aug. 18, 1953.

---

Frederick Paul, Seattle, Wash., William L. Paul, Jr., Juneau, Alaska, for appellant.

P. J. Gilmore, Jr., U. S. Atty., Juneau, Alaska, and James M. Fitzgerald, Asst. U. S. Atty., Ketchikan, Alaska, for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

Peter Johnson, Patrick Paul, Ray Johnson, Marten Johnson, Joe Peterson, and Mac Nakamura, appellants herein, were charged with and convicted of illegally fishing for salmon for commercial purposes on August 8, 1952, at Murder Cove, Tyee, Alaska, an area closed to commercial fishing. Appellants admit that they were fishing within an area which had been marked off as closed by the local agent of the Fish and Wildlife Service. However, appellants contend that the Wildlife agent exceeded his authority when he marked off closed areas; and therefore, in fishing within the marked area, they violated no valid statute or regulation.

■ . Appellants appeal from the judgment of conviction and move for the first time in this court to dismiss the complaint for the reason that the complaint fails to state an offense.

As to whether an original motion to dismiss the complaint on the ground that no cause has been stated may be made in this court, we need not concern ourselves because a judgment founded upon a complaint which does not state a crime cannot be sustained. Sonnenberg v. United States, 9 Cir., 1920, 264 F. 327; 24 C.J.S. Criminal Law § 1678; 3 Am.Jur., Appeal and Error § 328; Rule 12(b) (2), Federal Rules of Criminal Procedure, Title 18 U.S.C.A.

By the heading of the complaint, as drawn, a violation of Title 48 U.S.C.A. § 221, and Commercial Fishing Regulations promulgated thereunder, appears to be charged. By § 221 the Secretary of the Interior is granted the power to close areas to commercial fishing and to regulate the equipment, time, means, methods, and extent of commercial fishing in Alaska in order to conserve the Alaskan fisheries. However, the United States admits that the alleged facts do not state a violation of any regulation promulgated under § 221. But the United States does contend that the facts alleged in the complaint were sufficient to charge appellants with the violation of Title 48 U.S.C.A. § 232 and of regulation 102.14(b) promulgated under § 233 of Title 48 U.S.C.A. See 50 C.F.R. § 102.14(b).

■ The improper designation in the title of the complaint of the statutory authority for the crime set forth by the alleged facts does not void the complaint. "It is wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by some statute in force." Williams v. United States, 1897, 168 U.S. 382, 389, 18 S.Ct. 92, 94, 42 L.Ed. 509; see also Capone v. United States, 7 Cir., 1931, 51 F.2d 609, 616, 76 A.L.R. 1534; Vedin v. United States, 9 Cir., 1919, 257 F. 550, 551; United States v. Doss, D.C.1946, 66 F.Supp. 243, 246.

■ Congress, in enacting Title 48 U.S.C.A. § 232, made it unlawful to fish commercially for salmon within five hundred yards of the mouth of a river. In order to ascertain what Congress meant by "the mouth of a river" we must look to § 233 wherein the term is defined, as follows:

"For the purposes of this section, the mouth of such * * * river shall be taken to be the point determined as such mouth by the Secretary of the Interior and marked in accordance with this determination." 48 U.S.C.A. § 233.

Although a literal reading of the above quotation might lead to the conclusion that the delegation of Congressional authority must be confined to the purposes of § 233, it has been established that the § 233 definition of "the mouth of a river" must also apply to § 232. See Booth Fisheries v. United States, 9 Cir., 1925, 6 F.2d 500, 501, wherein this court said, " * * * in our opinion Congress never contemplated that a stream could have two mouths for the purposes of the act; one to be determined and marked by the Secretary of [the Interior], the other to be fixed or ascertained by the court or jury."

The Secretary of the Interior, acting under the Congressional delegation of authority, determined:

" * * * the mouth of any salmon * * * river * * * to be at a

line drawn between the extremities of its banks at mean low tide. The facts as to the location of any such line shall be ascertained from time to time by the Director of the Fish and Wildlife Service and such other persons as may be designated by the Director and in accordance therewith the mouth of such * * * river shall be appropriately marked and such marking shall be final." 50 C.F.R. § 102.14(b).

The quoted regulation was printed in the Federal Register[1] in accordance with the requirements of the Administrative Procedure Act, 5 U.S.C.A. §§ 1001(c) and 1003.

Appellants take the position that Regulation 102.14(b) is not a proper implementation of Title 48 U.S.C.A. §§ 232 and 233, because the Act requires the Secretary of the Interior, himself, to designate the location of the mouths of the respective salmon streams and to do so with exact geographical determinants published in the Federal Register. They argue that since the determination of the mouth of a river must depend upon the location of "mean low tide" which, they contend, can be fixed only in a discretionary and arbitrary manner, the task may not be subdelegated by the Secretary. And, they continue, even if the Secretary's authority may be subdelegated, it has not been properly done by publication in the Federal Register. And, finally, they attack Regulation 102.14(b) as too vague.

In Regulation 102.14(b) the Secretary has laid down a rule of general application for ascertaining the mouths of Alaskan rivers. Those who are subject to the rule have been adequately notified of its contents, both by publication in the Federal Register and by actual marking of the prohibited areas. The rule is reasonable: Its object is to conserve the Alaskan salmon which school outside the mouths of rivers in preparation for their ascent up the rivers to the spawning grounds. The measuring point of mean low tide was believed by the Secretary, in the exercise of his discretion, to give the fish the greatest measure of protection and to thus best carry into effect the policy of the Act.

We do not believe it necessary for the Secretary to fix the mouth of each river with longitudinal and latitudinal determinants in order to carry out the authority delegated him by Congress. It is true that the Secretary has thus designated some closed areas[2] but such practice does not exclude the use of any other proper method. Here, the Congress has fixed the closed area at five hundred yards from the mouth of a river. The Secretary has acted under his delegated authority to define the mouth of a river and his action, on its face, is not erroneous nor is it shown to be erroneous by the circumstances of the case considered in relation to the purposes of the Act. That the Secretary chose to exercise his duty by promulgating a general rule by way of definition is not an abuse of his discretion. Nor is his selection of mean low tide as a point of reference an unreasonable exercise of his authority.

Once the Secretary had laid down the general rule, it was not necessary for him, personally, to ascertain mean low tide at each point on the Alaska Coast and to set out the markers. While those functions require the employment of skill and intelligence, they are actually carried out by ministerial acts which can be done by subordinates in conformity with the general rule promulgated by the Secretary. It is true that since the markers are placed under the direction of the Secretary, he must shoulder the ultimate responsibility for their being correctly placed. However, it will be presumed that they were properly placed, absent a showing to the contrary. It will be noted that there is no showing, nor even any contention, in this case that the markers were not properly placed.

The definition of the mouth of a river was published in the Federal Register as was the provision for the subdelegation of the ministerial acts. The requirements of the Administrative Procedure Act were

1. 16 F.R. 2154; 16 F.R. 4497.

2. See, e.g., 50 C.F.R. §§ 105.18, 117.11, and 118.16.

fully complied with. We conclude that Regulation 102.14(b) adequately fulfills the Secretary's duty under §§ 232 and 233 of Title 48 U.S.C.A. Hence, appellants were convicted of the violation of a valid regulation. See Title 48 U.S.C.A. § 226.

Affirmed.