**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jonathan Howell HUSBAND R.
(ROACH), Defendant-
Appellant.**

**No. 29045.**

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1971.

George Leppert, New Orleans, La. (Court Appointed), for defendant-appellant.

Wallace D. Baldwin, Acting U. S. Atty., Cristobal, Canal Zone, Rowland K. Hazard, U. S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Before GODBOLD, CLARK and INGRAHAM, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant, a bus driver and a citizen of the Republic of Panama, was fined $10 for operating a passenger bus within the Panama Canal Zone in violation of a regulation of the Canal Zone relating

to use of highways, roads and streets.[1] But the issues are of much wider scope and difficulty than relief from a $10 traffic fine.

Appellant and the owner of his bus are members of a loose association composed of around 30 owners and drivers, citizens of the Republic of Panama, who operated 15 passenger buses which were based in the Republic. The buses operated on a fixed route the beginning and ending points of which were in the Republic, but which passed through part of the Canal Zone. For many years, extending at least as far back as World War II, bus service in the Canal Zone was furnished by both operators holding nonexclusive franchises granted by the Governor, and nonfranchised operators. In early 1959 the franchised operator, a single company formed by an amalgamation of several franchised companies, and operating wholly within the Canal Zone, was faced with the necessity of granting wage increases mandated by the Fair Labor Standards Act.[2] Civil affairs agencies of the Canal Zone concluded that the company's projected revenues would no longer cover expenses. At that time the franchised company was operating about 55 buses, and from 380 to 400 nonfranchised buses were operating in the Canal Zone. The bus driven by appellant, and presumably all or most of the other nonfranchised buses, were based in the Republic of Panama, driven by Panamanian-licensed drivers and with Panamanian plates (recognized in the Canal Zone),[3] and inspected under the laws of the Republic.

After considering and rejecting other alternatives for financial relief of the franchised company, such as fare increases and elimination of unprofitable routes, Canal Zone officials chose the solution of restricting the operation of nonfranchised buses so that the franchised company would have exclusive or almost exclusive access to several areas where the number of persons using bus service was highest. Accordingly the government amended the traffic regulations of the Canal Zone, § 167.496(a) of Canal Zone Administration and Regulations. Officials estimate that around 28 of the independent buses were affected by the amendment.[4]

The day after the amendment became effective appellant was arrested on a Canal Zone highway while driving his bus along its usual route and in one of the areas newly reserved to the franchised company. He was convicted in Magistrate's Court of operating his bus in violation of the regulation, a misdemeanor, and fined $10. He appealed to the United States District Court for the District of the Canal Zone,[5] where, in a trial de novo without a jury,[6] he was again found guilty and fined $10, from which conviction he appeals to this court. He contends here, as he did in the District Court, that the regulation is invalid and that it violates due process under the Fifth and Fourteenth Amendments.

The controversy concerns the authority of the Governor to issue traffic regulations generally, and, more particularly, his authority to amend § 167.496(a) and his authority to enter regulations relating to buses moving from the Republic into the Canal Zone and returning to the Republic. Because of the complexity of these questions arising under the unusual governmental structure of the Canal Zone, and because the controversy touches the delicate area of relations between the Canal Zone and the Republic

---

1. Punishable by fine of not more than $100 or imprisonment for not more than 30 days, or both. 2 Canal Zone Code [hereinafter C.Z.C.] § 1003.

2. 29 U.S.C. §§ 201–219.

3. See footnote 12, infra.

4. A civil affairs official of the Canal Zone testified that in selecting the areas to be made monopoly areas they considered not only the need of the franchised company for revenue but also sought to hold to a minimum the number of nonfranchised buses that would be excluded from areas where they had been operating.

5. Pursuant to 6 C.Z.C. § 3921.

6. 6 C.Z.C. § 3924.

of Panama, we have called for additional briefs from the parties. Necessarily we have relied in part upon the office of the U. S. Attorney for the District of the Canal Zone for source materials often obscure and not generally available.

■ Throughout this appeal the government has maintained that having failed to particularize any liberty or property right of which he might have been deprived, appellant lacks standing to challenge the regulation he has violated on the ground that it deprives others of their liberty or property without due process. However, we do not understand appellant to be basing his standing on rights other than his own. He raises a fundamental due process claim that his conviction deprives him of liberty by virtue of a regulation the promulgating authority lacked power to pass or which bore no reasonable relation to a proper governmental function.

1. *History and structure of the Canal Zone Government.*

In 1903 a convention was negotiated between the Republic of Panama and the United States for the construction of a ship canal across the Isthmus of Panama.[7] Article II of that treaty "grants to the United States in perpetuity the use, occupation and control of a zone of land and land under water for the construction, maintenance, operation, sanitation and protection of said Canal." Article III "grants to the United States all the rights, power and authority within the [Canal Zone] . . . which the United States would possess and exercise if it were the sovereign of the territory within which said lands and waters are located to the entire exclusion of the exercise by the Republic of Panama of any such sovereign rights, power or authority." In 1936 the United States and Panama concluded a General Treaty of Friendship and Cooperation, supplementing the 1903 Convention.[8]

■ The Canal Zone is an unincorporated territory of the United States. Laws applicable in the Canal Zone are enacted by the Congress—there is no local legislature. Luckenbach Steamship Co. v. Panama Canal Co., 196 F.Supp. 835 (D.C.C.Z.1961), aff'd, 303 F.2d 252 (5th Cir. 1962). The "organic act" for the Canal Zone is the Panama Canal Act of August 24, 1912, 37 Stat. 560, 2 C.Z.C. § 1, et seq., which was incorporated into the Canal Zone Code, effective June 19, 1934, and reenacted in the revised Canal Zone Code, effective January 2, 1963, 76A Stat. 1.

The Canal Zone Government is an independent agency of the United States established by Congress which "shall be administered, under the supervision of the President or such officer of the United States as may be designated by him, by a Governor of the Canal Zone." 2 C.Z.C. § 31. The Government is "charged, except as otherwise provided by law, with the performance of the various duties connected with the civil government, including health, sanitation, and protection of the Canal Zone." *Ibid.* Congress has provided further that the Governor of the Canal Zone shall: "(1) have official control and jurisdiction over the Canal Zone; and (2) perform all duties in connection with the civil government of the Canal Zone, which is to be held, treated and governed as an adjunct of the Canal." 2 C.Z.C. § 33. The Governor is appointed by the President by and with the advice and consent of the Senate and serves for four years and until his successor is appointed and has qualified. 2 C.Z.C. § 32.

We have, of course, kept in mind the possibility that either the existence, or the exercise by the Governor, of authority over operation of passenger buses in the status of that operated by appellant might conflict with some treaty or agreement between the Republic of Panama and the United States (or the Canal

---

7. Convention for the Construction of a Ship Canal, Feb. 25, 1904, 33 Stat. 2234, TS No. 431.

8. General Treaty of Friendship and Cooperation, Mar. 2, 1936, 53 Stat. 1807, TS No. 945 (effective July 27, 1939).

# 1058

Zone Government). Counsel have pointed us to none, and we find none.[9]

### 2. *The Canal Zone "bill of rights," and its application to appellant.*

■ The provisions of 1 C.Z.C. § 31, setting forth rights and guarantees having applicability in the Canal Zone, are patterned upon the Bill of Rights of the Constitution, including the Fifth Amendment. A statutory "bill of rights" enacted by Congress for an unincorporated territory such as the Canal Zone is to be given the same construction as that accorded the equivalent provisions of the Constitution. In discussing the "bill of rights" enacted by Congress for the Philippine Islands, the Supreme Court said:

> How can it be successfully maintained that these expressions of fundamental rights, which have been the subject of frequent adjudications in the courts of this country, and the maintenance of which has been ever deemed essential to our government, could be used by Congress in any other sense than that which has been placed upon them in construing the instrument from which they were taken?

> It is a well-settled rule of construction that language used in a statute which has a settled and well-known meaning, sanctioned by judicial decision, is presumed to be used in that sense by the legislative body.

Kepner v. United States, 195 U.S. 100, 124, 24 S.Ct. 797, 49 L.Ed. 114, 122 (1904). See also South Porto Rico Sugar Co. v. Buscaglia, 154 F.2d 96, 100 (1st Cir. 1946); Ballester-Ripoll v. Court of Tax Appeals of P. R., 142 F.2d 11, 18 (1st Cir.), cert. denied, 323 U.S. 723, 65 S.Ct. 55, 89 L.Ed. 581 (1944).

■ In areas under the jurisdiction of the United States to which the Fifth Amendment is applicable, an alien is entitled to its protection to the same extent as a citizen. Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954). Appellant, though an alien, was validly within the Canal Zone. By 2 C.Z.C. § 841, Congress has authorized the President to "prescribe, and from time to time . . . amend, regulations governing the . . . rights of persons to enter, remain upon or pass over any part of the Canal Zone." The President's authority in this area. has been delegated by him to the Secretary of the Army, 35 CFR 3.1(b), who has promulgated regulations governing the exclusion and deportation of persons from the Canal Zone, 35 CFR Part 59. As prescribed by these regulations, 35 CFR 59.28(a), a citizen and resident of the Republic of Panama who has not been excluded or deported from the Canal Zone has an unlimited right of entry into the Canal Zone and may move freely back and forth between the two jurisdictions.[10]

Thus we conclude that appellant, as an alien Panamanian validly in the Canal Zone, is entitled to the protection of the Canal Zone's "bill of rights," and, in fact, the United States now concedes that this is so.

### 3. *The authority of the Governor to adopt the regulation.*

■■ We turn to the question of the Governor's authority to adopt and to amend a regulation for the Canal Zone which directly affects commerce moving across the borders between the Canal Zone and the Republic. Congress has complete and plenary authority to legislate for an unincorporated territory such as the Canal Zone, pursuant to art. IV, § 3, cl. 2 of the Constitution, empowering it "to dispose of and make all needful

---

9. See footnote 12, *infra.*

10. Probably the result would be no different if appellant had not been legally within the Canal Zone. The guarantees of the Fifth Amendment apply even to those whose entry is alleged to be illegal.

Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); Wong Yang Sung v. McGrath, 339 U.S. 33, 49, 70 S.Ct. 445, 94 L.Ed. 616, 628 (1950); and Kaoru Yamataya v. Fisher, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1902).

Rules and Regulations respecting the Territory or other Property belonging to the United States." [11]  In the exercise of such plenary powers, Congress may freely delegate its legislative authority to such agencies as it may select. United States v. Heinszen, 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098 (1907); Annexation of Slatersville to Town of Fairbanks, 12 Alaska 308, 83 F.Supp. 661 (1949).

■ With respect to the basic areas of civil government of the Canal Zone, Congress has delegated its plenary authority to the executive branch of our government. It has granted broad authority to the President, or directly to the Governor, over many fields of governmental activity: e. g., use of highways and vehicular traffic, 2 C.Z.C. § 1001(a); aircraft, air navigation, air navigation facilities, and aeronautical activities, 2 C.Z.C. § 701; manufacture, sale, and importation of alcoholic beverages, 2 C.Z.C. § 731; entry and importation of goods into the Canal Zone, 2 C.Z.C. § 761; exclusion and deportation of persons, 2 C.Z.C. § 841; health, sanitation and quarantine, 2 C.Z.C. § 911; maintenance and operation of a postal service, 2 C.Z.C. § 1131; navigation, transiting, pilotage, and the licensing of ships' officers, 2 C.Z.C. § 1331.

■ With particular respect to use of highways and vehicular traffic, the Canal Zone Code provides:

Unless otherwise provided by the Congress, the President may make, publish and enforce, and from time to time amend, rules and regulations for the use of the public highways and roads in the Canal Zone, and for the regulation, licensing, and taxing of the use and operation of all self-propelled vehicles using the public highways and roads, including speed limit, signals, tags, license fees, and all detailed regulations which may, from time to time, be deemed necessary in the exercise of the authority hereby conferred.

2 C.Z.C. § 1001(a). This power has been delegated to the Governor through a series of executive orders, the present authority being that found in 35 CFR 3.3 (a):

The Governor shall exercise the powers vested in the President of the United States by the following provisions of the Canal Zone Code: (1) 2 C.Z.C. 1001 (76A Stat. 37), relative to making, publishing, enforcing, and amending rules and regulations for the use of public highways and roads in the Canal Zone, for the regulation, licensing, and taxing of the use and operation of all self-propelled vehicles using the public highways and roads, and for the other matters referred to in 2 C.Z.C. 1001.

Thus in exercising his powers concerning vehicular traffic and operation of passenger buses, the Governor, acting under delegation from the President, is in effect the agent and creature of Congress.

■ Congress being given extensive power to regulate interstate and foreign commerce, U.S.Const. art. 1, § 8, and "to . . . make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States," U.S.Const. art. IV, § 3, cl. 2, the Governor as its delegate is not subject to the limitations imposed upon a state legislative body by the commerce clause, such as was involved in Buck v. California, 343 U.S. 99, 72 S.Ct. 502, 96 L.Ed. 775 (1952). See Sancho v. Bacardi Corp., 109 F.2d 57, 62, 63 (1st Cir.) rev'd on other grounds sub nom. Baccardi Corp. v. Domenech, 311 U.S. 150, 61 S.Ct. 219, 85 L.Ed. 98 (1940), and Buscagalia v. Ballester, 162 F.2d 805, 806–807 (1st Cir.), cert. denied, 332 U.S. 816, 68 S.Ct. 154, 92 L.Ed. 393 (1947), both concerning Puerto Rico, when it was an unincorporated territory.

Having in mind the power of Congress over interstate and foreign commerce, its power to make regulations respecting territory of the United States, and its plenary power over the Canal Zone, and

11. Simms v. Simms, 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899).

also that the legislative delegation from Congress to the President by § 1001 is not qualified, we do not construe that section to reach only intra-Zone commerce. There is constant and substantial movement of vehicles back and forth between the Canal Zone and the Republic of Panama. To treat the delegation to the President as limiting his authority to local, intra-Zone traffic would result either in a regulatory vacuum or in the necessity for the very detailed, regulatory control from the halls of Congress which the delegation sought to avoid. This construction is buttressed by 2 C.Z.C. § 1002, part of Chapter 65, "Highways, Roads and Vehicles," by which Congress vested the President with authority to make agreements with the Republic of Panama concerning reciprocal use of the public highways and roads of the Zone and the Republic by self-propelled vehicles, and taxes and license fees, and "other matters of regulation to establish comity for the convenience of the residents of the two jurisdictions." The President has redelegated his authority under this section to the Governor. 35 CFR 3.3(a) (2).[12] Also, several of the areas of authority delegated by Congress to the executive branch, listed above, concern matters which, as to the Zone, would be called "foreign commerce," such as customs, air navigation, the Canal Zone postal service, immigration, exclusion and deportation of persons, and navigation.

█ We think that the authority delegated to the Governor to regulate use of the highways of the Canal Zone with respect to vehicles moving between the Re-

public and the Zone includes authority to restrict the operations of commercial passenger buses, as has been done by § 167.496. State and local governmental bodies in the United States are recognized to have such authority. Also we give weight to the long-standing interpretation by the executive branch as to this particular authority possessed by Congress' delegates as governing agencies of the Canal Zone.[13]

Ordinances limiting routes available to buses have long been upheld as valid exercises of the police power to promote the safety, health, morals, comfort, or convenience of the community, Fritz v. Presbrey, 44 R.I. 207, 116 A. 419 (1922), and more specifically as permissible responses to constitutional provisions and statutes reserving to cities a right to reasonable control of their streets. State ex rel. Pennington v. Quigg, 94 Fla. 1056, 114 So. 859 (1927), Red Star Motor Drivers' Ass'n v. Detroit, 234 Mich. 398, 208 N.W. 602 (1926), petition for cert. dismissed, 275 U.S. 486, 48 S.Ct. 27, 72 L. Ed. 386 (1927). Use of the streets by commercial vehicles including passenger buses has been called a privilege within the state's or municipality's discretion to grant or deny at will, subject only to prohibitions against arbitrary or discriminatory decisions. See generally Annot., 121 A.L.R. 573, 577–86 (1939).

Turning to the executive interpretation of authority to regulate passenger buses in the Canal Zone, we set out in the margin pertinent parts of Executive Order 7242 issued by President Roosevelt in 1935, which implemented the statutory predecessor to § 1001.[14] At least

12. This authority has been implemented by agreements providing for reciprocal recognition of license plates and drivers' licenses, App. IX, C.Z.C. §§ 81–82, 171–172. Our attention has not been directed to any reciprocal agreement respecting rights to operate passenger buses in the Canal Zone, or routes of passenger buses in the Zone.

13. FTC v. Mandel Bros., Inc., 359 U.S. 385, 391, 79 S.Ct. 818, 3 L.Ed.2d 893, 898 (1959), Billings v. Truesdell, 321 U.S. 542, 552, 64 S.Ct. 737, 88 L.Ed. 917, 923 (1944).

14. "Article V, Section 72. *Prohibiting or Restricting Operation in Designated Areas.* The Governor is authorized by public notice to prohibit the operation of vehicles of any or all kinds on such portions of the highways in the Canal Zone as he may designate, when in his judgment the public interest so requires; or to impose such conditions upon the operation of said vehicles in any area or district designated by him as he may deem necessary or convenient in the public interest."
      *      *      *      *      *

since 1942 the Governor has promulgated regulations restricting the operation of buses on streets of the Zone (pre-1942 traffic regulations are not available). Executive Order 7242, which set forth substantive traffic regulations directly promulgated by the President, as well as various delegations to the Governor to exercise regulatory authority in certain prescribed fields, was superseded by section 6(a) of Executive Order 9746 of July 1, 1946, as renumbered by Executive Order 10595 of February 7, 1955. Section 6(a) of Executive Order 9746, as amended, constituted a complete delegation to the Governor of the authority vested in the President under 2 C.Z.C. § 321 (1934), now 2 C.Z.C. § 1001, in the exercise of the authority given him by Executive Order 9746, the Governor issued a revised set of "Regulations . . . Respecting Highways, Vehicles, and Vehicular Traffic in the Canal Zone," effective July 1, 1955, § 5.-145 of which continued the imposition of restrictions on the operation of buses on the highways of the Canal Zone; it prohibited such operation upon any highway, except those listed in that section, without a permit from the Civil Affairs Director of the Canal Zone Government. The provisions of § 5.145 of the 1955 regulations, as amended in 1960 and 1961, were repromulgated by the Governor on November 10, 1966, as § 167.496 (a), and remained unchanged until issuance by the Governor on January 6, 1969, effective February 15, 1969, of the amendment which gave rise to this case.

In short, regulations restricting the operation of buses in the Canal Zone date back at least 28 years, and, beginning with Executive Order 7242 of 1935, the executive branch has consistently construed the delegation from Congress under 2 C.Z.C. § 1001 and its predecessor as authorizing the President to regulate and restrict the operation of public buses on the highways of the Canal Zone.

4. *Was the Governor's exercise of authority arbitrary or discriminatory?*

The Governor's action was not arbitrary or discriminatory so as to violate due process as incorporated into the Canal Zone "bill of rights." The Governor has the right, if not a duty, to provide reliable and safe scheduled public transportation service for the Canal Zone in order that the operation, maintenance and protection of the vital installations located therein will be furthered. The terms of the franchise to the sole franchised operator give the Canal Zone Government broad supervisory powers over equipment, routes and terminals, personnel, wages, fares, insurance and other details of the company's operations. We cannot say that a desire to protect the franchised service in order to insure its continuance is unreasonable. Whether the projected revenues of the franchised company would not meet expenses once the mandatory wage increase was put into effect was a determination to be made by the Governor as legislative delegate and not by the courts, and, in any event, there is no evidence that the conclusion of projected insufficient revenue, made by the transportation agency of the Canal Zone, was incorrect. Appellant's real complaint is not of the need but of the means adopted to meet it. The amendment of the regulation was reasonably related to a proper legislative purpose.[15] Furthermore, the amended

---

"Article VI, Section 172. *Operation of Buses; Special Regulations Authorized.* The Governor may, if he considers it in the public interest, prescribe special regulations for the operation of passenger-carrying motor vehicles of the bus type, to prescribe the routes over which such buses may operate, to prescribe bus stops to which shall be restricted the stopping of such buses for taking on or discharging

passengers on certain highways where conditions warrant, and to issue licenses and franchises to individuals and companies. Licenses or franchises so issued shall be revocable for cause without right to indemnity."

15. In response to appellant's general allegation that he has been deprived of property without due process, we note that

regulation is neither arbitrary nor discriminatory. We need not consider what the effect would have been if the franchised company's access to the particular areas had been exclusive and unrelated to public needs. The regulation permits any bus operator to carry on his business along the otherwise prohibited routes provided he applies for and receives a permit from the Civil Affairs Director, the issuance of which is conditioned upon "the need therefor [being] . . . established." Since appellant's arrest a number of permits have been issued allowing some degrees of operation in various parts of the restricted areas, and at least one of these was granted to a bus company based in Panama. Appellant failed to show that he or other operators in the association of which he is a member had ever applied for or been denied a permit. Even if that proof had been made, appellant still would have had to show that the denial lacked a rational basis for differentiation—that it was invidious. Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Cf. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). The mere impingement by an intervening reasonable regulation upon appellant's previously unencumbered freedom to operate his bus over the now proscribed route does not alone make a case of illegal discrimination. The requirements of substantive due process were met. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940, 957 (1934).

### 5. *Notice and hearing.*

Appellant claims that he has obtained a property interest by long and uninterrupted use, that he has operated a bus for so long without franchise or permit that the Canal Zone Government is now estopped to require him to comply with

a regulation limiting his right to operate. He couples this with insistence that he was accorded neither notice nor hearing on the Governor's action in changing the regulations.

■ Speaking generally, the right to use the public highways for purposes of profit is a special and extraordinary privilege which the legislature may prohibit or condition. Stephenson v. Binford, 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1932). The right of the legislative body to exclude jitney buses from the streets generally or from specified areas, even those where previously operating, has long been upheld. Red Star Motor Drivers' Assn. v. Detroit, 234 Mich. 398, 208 N.W. 602 (1926), petition for cert. dismissed, 275 U.S. 486, 48 S.Ct. 27, 72 L.Ed. 386 (1927); Schlesinger v. Atlanta, 161 Ga. 148, 129 S.E. 861 (1925); Denny v. Muncie, 197 Ind. 28, 149 N.E. 639 (1925); Ex parte Dickey, 76 W.Va. 576, 85 S.E. 781 (1915); Peters v. San Antonio, 195 S.W. 989 (Tex.Civ.App. 1917).

■ We need not pause over the argument whether appellant is possessed of some kind of property interest acquired by estoppel. Whether a particular constitutional protection attaches depends upon the relative weights of the private interest affected and the governmental function involved, and not upon assignment of meaning to the word "property." Cafeteria and Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The Fifth Amendment does not require a trial type hearing in every conceivable case of governmental impairment of private interests. *Id.* at 894, 81 S.Ct. 1743, 6 L.Ed.2d at 1236. Weighing the extent to which appellant may be "condemned to suffer grievous harm," Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), as compared with the governmental interest in responding to changing circumstances by

---

ordinances validly prohibiting the operation of certain businesses without first obtaining municipal permission do not

work such an illegal deprivation. Fischer v. City of St. Louis, 194 U.S. 361, 24 S.Ct. 673, 48 L.Ed. 1018 (1904).

appropriate legislative action, we conclude that no hearing was required. Appellant acquired and utilized his alleged interest at the discretion of the Governor. The Governor has now used that same discretion to protect the vital interests of the populace in transportation service and in a viable public carrier. While the effect of the governmental action is to deprive the appellant of access to a route important to his operation and to cause economic hardship to him, just as it adversely affects others, it does not deny to him the right to pursue his occupation, *cf.* Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and it does not deprive him "of the very means by which to live," Goldberg v. Kelly, *supra.* Subject to permit requirements, he can still operate a bus in all parts of the Canal Zone left open by the amended regulation.

As to statutory requirements of notice, public notice of promulgation of the amended regulation was given by newspaper publication as required by 2 C.Z.C. § 1541.

The judgment of conviction is affirmed.