**UNITED STATES of America**

v.

**Robert MATHERSON, Defendant.**

**UNITED STATES of America,**

v.

**Carolyn MATHERSON, Defendant.**

**Nos. 73–CR–691 to 73–CR–697, 73–CR–710.**

United States District Court,
E. D. New York.

Dec. 10, 1973.

Robert A. Morse, U. S. Atty., E. D. N. Y., for plaintiff; David A. De Petris, Asst. U. S. Atty., of counsel.

James M. La Rossa, New York City, for defendants.

## FINDINGS, CONCLUSIONS AND OPINION

TRAVIA, District Judge.

These eight actions came on for trial on September 18, 1973. By agreement of all parties concerned the actions would be consolidated and the facts stipulated. A jury trial was waived and decision was reserved.

The defendant, Robert Matherson, by five separate Informations duly filed, has been charged with violations of Title 36 C.F.R., Section 7.20, subsection 2 and subsection 3 (Title 16, United States Code, Section 3).

The defendant, Carolyn Matherson, by three separate Informations duly filed, has been charged with violations of Title 36 C.F.R., Section 7.20, subsection 2 and subsection 3 (Title 16, United States Code, Section 3).

## DISCUSSION OF FACTS AND LAW

The defendants, Robert Matherson and Carolyn Matherson, move to have Title 36 C.F.R. § 7.20 declared unconstitutional and the charges against them dismissed, or in the alternative, to have a Judgment of Acquittal entered.

Robert Matherson and Carolyn Matherson have been charged with violation of Title 36 C.F.R. § 7.20(2), (3) prohibiting the use of a motor vehicle without a permit and prohibiting the operation of a motor vehicle during restricted hours, respectively, within the boundaries of the Fire Island National Seashore.

The parties have agreed to stipulate to the relevant facts surrounding each alleged violation. As a result, the only issue before this court is the constitutionality of Title 36 C.F.R. § 7.20.

■■ Congress has plenary power to make rules and regulations concerning the use of land belonging to the United States.[1] This power is without limitation and preempts that of the Executive or of the several states unless Congress specifically authorizes the administration of public land by one or both of these governmental units.[2]

■ Congress has authorized the Secretary of the Interior ("Secretary") to establish the Fire Island National Seashore.[3] The Secretary is in charge of administering the National Seashore in a manner consistent with the general Congressional intent of preserving the natural resources located on Fire Island.[4] In carrying out this delegated duty, the Secretary may appoint subordinate officials and subdelegate to them the necessary power needed to perform the day to day operations of the National Seashore.[5] The Secretary has subdelegated such power to the Superintendent of the Fire Island National Seashore ("Superintendent"). In exercising his subdelegated power, the Superintendent, as the agent of the Secretary, promulgated rules and regulations governing the use of motor vehicles on National Seashore land.[6]

Title 36 C.F.R. § 7.20(2), (vii) provides:

"No permit will be issued by the Superintendent for any motor vehicle

---

1. U.S.Const. art. 4 § 3, cl. 2.

2. Van Brocklin v. Tennessee, 117 U.S. 151, 167, 168, 6 S.Ct. 670, 29 L.Ed.2d 845 (1886); Butte City Water Co. v. Baker, 196 U.S. 119, 126, 25 S.Ct. 211, 49 L.Ed. 409 (1905); United States v. City and County of San Francisco, 310 U.S. 16, 29, 60 S.Ct. 749, 84 L.Ed. 1050 (1940); United States v. State of California, 332 U.S. 19, 27, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); United States v. Husband R. (Roach), 453 F.2d 1054 (5th Cir.), cert. denied, 406 U.S. 935, 92 S.Ct. 1785, 32 L.Ed.2d 136 (1972).

3. Title 16 U.S.C. § 459e(a).

4. Title 16 U.S.C. § 459e-6 (a).

5. *See, e. g.,* United States v. Bareno, 50 F. Supp. 520, 528 (D.Md.1943); Johnson v. United States, 206 F.2d 806, 809, 14 Alaska 380 (9th Cir. 1953). It should be noted that the Secretary remains ultimately responsible for the actions of his subordinates.

6. Title 36 C.F.R. § 7.20.

until the applicant has first secured from the towns of Brookhaven and/or Islip . . . an appropriate permit covering the same activity, use, and area of use for which a seashore permit is requested."

This rule and regulation which sets forth requirements to secure a National Seashore vehicular permit is not an invalid subdelegation of administrative authority to a local municipality. Furthermore, Title 36 C.F.R. § 7.20(2), (vii) does not represent an unconstitutional usurpation of Congress' power to make rules and regulations respecting property belonging to the United States.

The Fire Island National Seashore was established in 1964 for the purpose of conserving and preserving certain unspoiled and undeveloped beaches located on Fire Island, New York.[7] The Senate Committee on Interior and Insular Affairs originally remarked:

"On its field investigation of the area, the committee members were impressed with the fact that there are no roads traversing Fire Island and it is the intent of the committee that the Park Service continue in its present roadless state." [8]

Both parties agree that the purpose of the Town of Islip Beach Buggy Ordinance and Title 36 C.F.R. § 7.20 is to prevent erosion on Fire Island. The local municipalities and the Superintendent of the National Seashore have endeavored to cooperate with each other to maintain the natural beauty of Fire Island.[9] It was in furtherance of this spirit of cooperation that the Superintendent promulgated Title 36 C.F.R. § 7.20(2), (vii). This section is in no way an abdication of the Superintendent's power to administer the National Seashore. Rather, the instant section merely exemplifies an effort by the Superintendent to facilitate the orderly prevention of erosion on the island. The Super-

intendent still makes the ultimate determination of whether to grant a vehicular permit to travel on National Seashore land. Similarly, the Town of Islip Beach Buggy Commission makes the final determination of whether to grant a vehicular permit to travel on land within the Town of Islip on Fire Island. The Town of Islip Beach Buggy Commission has absolutely no power to grant a vehicular permit for the National Seashore.[10] Moreover, the practicalities of the situation dictate that such a regulation be in existence. The local municipalities and the National Seashore are contiguous. Here, while the defendants do not allege to be year round residents of Fire Island, they have a house at 90 West Lighthouse Walk Kismet, Fire Island and in order to reach Kismet by motor vehicle, one must travel across the Robert Moses Bridge and then proceed eastward on public roads owned by the state or federal government. The final approach to Kismet is a sandy, unpaved road owned by the state and capable of being traversed only by four wheel drive vehicles. Once at Kismet, the only avenues of transportation are unpaved passageways approximately six feet wide. Consequently, it is apparent that a vehicular permit from the National Seashore is of little value without the corresponding vehicular permit from the appropriate local municipality. More specifically, an individual holding only a National Seashore vehicular permit would be prohibited from traversing state land and thereby be precluded from ever reaching the National Seashore by motor vehicle. The promulgation of Title 36 C.F.R. § 7.20(2), (vii) has foreclosed the possibility of such an anomaly ever existing. This regulation requires that one first obtain a permit from the requisite local municipality before a similar permit will be issued by the Superintendent.

The courts have upheld similar grants of administrative power to the states in

---

7. *Supra* note 3.

8. U.S.Code Cong. and Admin.News, S.R.Doc. No. 1300, 88th Cong., 2d Sess. p. 3711 (1964).

9. *See* Town of Islip Beach Buggy Ordinance; *See also supra* note 6.

10. Town of Islip Beach Buggy Ordinance, Section 61–1.

order to expedite federal, state cooperation. For example, in Gauley Mountain Coal Co. v. Director of U. S. B. of Mines, 224 F.2d 887 (4th Cir. 1955), the court upheld a federal statute which required the state classification of a mine as a condition precedent to federal regulation. In so holding the court stated:

"There is no delegation by Congress of its own power to a state agency, but merely the acceptance by Congress of state action as the condition upon which its exercise of power is to become effective." [11]

Along this same line, the Supreme Court sustained the constitutionality of the so called Webb-Kenyon Act against an attack that the act improperly delegated federal authority to the states.[12] In delivering the opinion of the Court, Chief Justice White aptly related:

"The argument as to delegation to the states rests upon a mere misconception. It is true the regulation which the Webb-Kenyon Act contains permits state prohibitions to apply to movements of liquor from one state into another, but the will which causes the prohibitions to be applicable is that of Congress, since the application of state prohibitions would cease the instant the act of Congress ceased to apply." [13]

Here, the defendants seem to be laboring under the same misconception. If Title 16 U.S.C. § 459e–6 ceased to apply, then the Superintendent would be without power to promulgate rules and regulations governing vehicular traffic on National Seashore land. Concomitantly, the Town of Islip Beach Buggy Commission would be without power to affect the issuance of a National Seashore vehicular permit. Moreover, the state's delegated authority in Gauley and Clark Distilling

Co. v. Western Maryland R. Co., 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917) was far more extensive than the local municipalities' delegated authority under the instant regulation. In those two cases, the state's classification was final and all that remained was to apply the federal regulation. In contrast, under Title 36 C.F.R. § 7.20 the Superintendent retains the ultimate decision-making power. Significantly, no National Seashore vehicular permit shall issue unless the Superintendent so decrees.

■■■■ The defendants next argue that the Superintendent's arbitrary and capricious issuance of special permits to individuals on the basis of hardship renders Title 36 C.F.R. § 7.20 invalid. This argument is without merit. The Superintendent has only issued special permits to those individuals who qualify on the basis of age and infirmity. Concomitantly, the standards for the issuance of special permits are clear; age and infirmity. Moreover, the fact that the Superintendent may have improperly issued special permits is not grounds for holding Title 36 C.F.R. § 7.20 unconstitutional. The defendants' assertion is more properly addressed to the individual misconduct of the Superintendent.[14] Official misconduct may be of an unconstitutional nature, but it does not follow that such misconduct renders the applicable regulation unconstitutional in its entirety. Title 36 C.F.R. § 7.20 is constitutional on its face as a valid subdelegation of administrative authority.

■■■■ The defendants also maintain that the absence of specific standards governing the issuance of special permits on the basis of hardship renders the Town of Islip Beach Buggy Ordinance vague and, therefore, invalid. This ordinance is not ripe for review in the con-

11. Gauley Mountain Coal Co. v. Director of the U. S. B. of Mines, 224 F.2d 887, 890 (4th Cir. 1955).

12. Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917).

13. Id. at 326, 37 S.Ct. at 185.

14. See, e. g., Larson v. Domestic and Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

784

text of the instant federal criminal proceeding. The defendants have been charged with motor vehicle violations on National Seashore land. The defendants have not been charged with any similar violations on land within the Town of Islip.

The mere fact that the Superintendent has promulgated a rule and regulation which requires an individual to first secure a permit from the Town of Islip Beach Buggy Commission as *one* of the prerequisites to the issuance of a National Seashore permit does not warrant a full consideration of the constitutionality of the Town of Islip Beach Buggy Ordinance. The issue before this court is the constitutionality of Title 36 C.F.R. § 7.20 and not the constitutionality of the aforementioned ordinance.

The parties have submitted memoranda of law and the same have been considered.

### Findings of Fact

It is conceded that the facts are not in dispute and the parties have agreed that if the constitutionality of the law involved is upheld there can be no defense to the violations as charged.

### Conclusions

The defendants' motion to have Title 36 C.F.R. § 7.20 declared unconstitutional is denied.

The defendants' motion to dismiss the charges in the separate Informations is denied.

The defendants' motion for separate judgments of acquittal is denied.

This court finds that the defendant, Robert Matherson, is guilty beyond a reasonable doubt of the charges separately alleged in the Informations 73–CR–691, 73–CR–692, 73–CR–693, 73–CR–694 and 73–CR–710.

This court finds that the defendant, Carolyn Matherson, is guilty beyond a reasonable doubt of the charges separately alleged in the Informations 73–CR–695, 73–CR–696 and 73–CR–697.