**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Plaintiff-Appellee,**

v.

**James G. WATT, Secretary of the Interior, et al., Defendant-Appellant,**

and

**Walker River Paiute Tribe of Nevada, Defendant-Intervenor-Appellant.**

**Nos. 80–4505, 80–4506.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1982.

Decided March 1, 1983.

Laura Frossard, Atty., Dept. of Justice, Washington, D.C., for Watt.

Yvonne T. Knight, Jeanne S. Whiteing, Native American Rights Fund, Boulder, Colo., for Walker River Paiute Tribe.

Nathan Jenkins, Reno, Nev., William R. Foley, Robert J. Foley, Foley, McIntosh & Foley, Albany, Cal., for Southern Pacific.

James McCartney, Houston, Tex., for amicus curiae Transwestern Pipeline Co.

Before FLETCHER, POOLE and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The Walker River Paiute Tribe of Nevada (Tribe) and the Secretary of the Interior (Secretary) appeal from the district court's grant of summary judgment in favor of Southern Pacific Transportation Company (Southern Pacific). The district court held that tribal consent is not a condition precedent to the filing and processing of an application for a right-of-way across tribal lands under the Act of March 2, 1899, ch. 374, 30 Stat. 990 (codified at, 25 U.S.C.

§§ 312–318 (1976)) (1899 Act or Act). We disagree and reverse the grant of summary judgment in favor of Southern Pacific.

## I. Facts

The relevant facts are undisputed. Since 1882 Southern Pacific and its predecessors have operated a railway and adjoining telephone and telegraph lines over lands within the Walker River Indian Reservation. In 1976, this court held that Southern Pacific "does not have and has never had a valid right-of-way across lands within the original 1874 executive order boundaries of the Walker River Reservation except through the lands ceded by the Tribe to the United States in 1906." *United States v. Southern Pacific Transpor.*, 543 F.2d 676, 699 (9th Cir.1976) (*Southern Pacific I*). As a result, on April 28, 1977, Southern Pacific filed an application with the Western Nevada Agency of the Bureau of Indian Affairs for a railroad, telephone and telegraph right-of-way through 10.89 miles of tribal lands within the Walker River Indian Reservation. Southern Pacific sought the right-of-way under the provisions of the 1899 Act. On May 4, 1977, the Agency Superintendent rejected the application without filing it, because it did not include evidence that the Tribe had consented to the right-of-way. Southern Pacific appealed the Agency Superintendent's decision within the agency, and the decision was upheld at all administrative levels.

Southern Pacific sought review of the agency action in federal district court. The Tribe intervened as a party-defendant. After cross motions for summary judgment, the district court entered judgment in favor of Southern Pacific. This appeal followed.

## II. Discussion

We must determine whether Congress has authorized the Secretary to impose a condition of tribal consent on an application for a right-of-way under the 1899 Act. The Secretary and the Tribe contend that the 1899 Act itself vests in the Secretary the authority to impose conditions, including tribal consent, on railroad rights-of-way across Indian tribal lands. They argue that the district court erred in characterizing the 1899 Act as an eminent domain statute and a grant *in praesenti*. The Tribe argues in the alternative that even if the 1899 Act is a grant *in praesenti*, that fact would not preclude the Secretary from establishing conditions with which prospective grantees must comply before a grant becomes effective. We conclude that the 1899 Act is not an eminent domain statute. We further conclude that the 1899 Act—whether a grant *in praesenti* or not—authorizes the Secretary to establish, by regulation, grant preconditions, including one of tribal consent. The Secretary has exercised that authority and promulgated a regulation providing that "[n]o right-of-way shall be granted over and across any tribal land ... without the prior consent of the tribe." 25 C.F.R. § 161.3(a) (1981). We reject Southern Pacific's contention that the regulation constitutes an unlawful redelegation of the Secretary's authority.

■ In interpreting the 1899 Act, we are guided by our earlier determination in this case that the Act was intended fully to protect Indian interests. *Southern Pacific I*, 543 F.2d at 692; *see* H.R.Rep. No. 1896, 55th Cong., 3d Sess. 2 (1899). It must therefore be liberally construed in favor of the Indians. *Id.; see Bryan v. Itasca County*, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976). We must also bear in mind that the construction of a statute rendered by the agency charged with its administration is ordinarily entitled to substantial deference. *United States v. Rutherford*, 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Central Lincoln Peoples' Utility Dist. v. Johnson*, 673 F.2d 1076, 1078 (9th Cir.1982); *Adams v. Howerton*, 673 F.2d 1036, 1040 (9th Cir.), cert. denied, —— U.S. ——, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982). Our review is limited to determining whether the Secretary's interpretation is reasonable. *Central Lincoln*, 673 F.2d at 1078; *Columbia Basin Land Protection Assoc'n v. Schlesinger*, 643 F.2d 585, 600 (9th Cir.1981).

## A. The 1899 Act

The 1899 Act provides in part:

A right of way for a railway, telegraph and telephone line through any Indian reservation ... is granted to any railroad company organized under the laws of the United States, or of any State or Territory, which shall comply with the provisions of sections 312–318 of [the 1899 Act] and such rules and regulations as may be prescribed thereunder.

25 U.S.C. § 312 (1976). Provisos follow that establish certain conditions that the Secretary must assure have been fulfilled. The district court held that the 1899 Act grants to a railroad the power of eminent domain to condemn rights-of-way through Indian reservations and that "[t]he concept of tribal consent as a pre-condition to the grant of a right-of-way is the very antithesis of the exercise of the power of eminent domain." The district court also held the 1899 Act to be a grant *in praesenti* subject to the performance of conditions precedent and conditions subsequent. Therefore, in the district court's view, the Act does not vest in the Secretary authority to establish grant preconditions beyond those contained in the statute but rather expressly specifies the conditions the Secretary must find to be satisfied prior to approving an application. The Secretary and the Tribe challenge the district court's determination that the 1899 Act is a grant of the power of eminent domain and a grant *in praesenti*. They argue that Section 312 of the Act delegates to the Secretary authority to promulgate legislative rules and, thereby, the authority to establish grant preconditions by regulation. We conclude that the interpretation advanced by the Secretary and the Tribe is both reasonable and in accord with our obligation to construe the 1899 Act liberally in the Tribe's favor. Having concluded that the interpretation advanced by the Secretary of Interior, the head of the agency charged with administration of the 1899 Act, is reasonable, we need not inquire further into the meaning of the provisions of the Act. "[W]e need not find that [the Secretary's] construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Udall v. Tallman, supra,* 380 U.S. at 16, 85 S.Ct. at 801, *quoting Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946). It is enough that the Secretary's interpretation is reasonable, and there are several grounds for concluding that it is.

The plain language of the Act supports the interpretation of the Secretary and the Tribe. Section 1 provides that a right-of-way "is granted" to a railroad company that complies "with the provisions of sections 312–318 of this title [the 1899 Act] *and* such rules and regulations as may be prescribed thereunder ...." 25 U.S.C. § 312 (1976) (emphasis added). Thus, section 1 may be read to establish two sources of conditions precedent: the statutory provisions and the Secretary's regulations. That reading of section 1 is reinforced by the fact that section 7 directs the Secretary to "make all needful rules and regulations, not inconsistent with sections 312–318 of this title, for the proper execution and carrying into effect of all the provisions of said sections." *Id.* at § 317. The grant of rule-making authority in section 1 would be superfluous if it did not confer authority to promulgate requirements, beyond those specified in the Act. Furthermore, the use of the phrase "rules and regulations, *not inconsistent* with sections 312–318 of this title" (emphasis added) in section 7 (§ 317) rather than such a phrase as "rules and regulations, in furtherance of the provision of sections 312–318 of this title" supports a broad interpretation of the grant of rule-making authority.

Nothing in the legislative history of the 1899 Act suggests that the interpretation urged by the Secretary and the Tribe is unreasonable. That history is silent on the question of the scope of the authority vested in the Secretary by the Act. *See* H.R. Rep. 1896, 55th Cong., 3d Sess. 1–2 (1899); 32 Cong.Rec. 1753–55, 1849, 2041–42, 2471–72 (1899).

The construction we approve here is also consistent with the 1948 General Rights-of-Way Act, Pub.L. No. 80–407, 62 Stat. 17 (codified in 25 U.S.C. §§ 323–328 (1976)) (1948 Act), which provides that "[n]o grant of a right-of-way over and across any lands belonging to a tribe organized under [the Indian Reorganization Act of 1934][1] ... shall be made without the consent of the proper tribal officials." 25 U.S.C. § 324 (1976). We recognize that interpretation of the 1899 Act must rest primarily on its own language and legislative history. Nevertheless, the 1899 Act and the 1948 Act both pertain to rights-of-way across Indian lands and share a common purpose: the preservation and protection of Indian interests. The Supreme Court has expressly approved the construction of statutes affecting reservation Indians in light of intervening legislation. *Bryan v. Itasca County, supra,* 426 U.S. at 386, 96 S.Ct. at 2109; *see Moe v. Salish & Kootenai Tribes,* 425 U.S. 463, 472–75, 96 S.Ct. 1634, 1640–42, 48 L.Ed.2d 96 (1976). Furthermore, the legislative history of the 1948 Act suggests that the drafters of that Act believed that, at least after adoption of the 1948 Act, no right-of-way across lands of a tribe organized under the 1934 Act could be granted without tribal consent. *See* S.Rep. No. 823, 80th Cong., 2d Sess., *reprinted in* [1948] U.S.Code Cong. & Ad.News 1033, 1036. *See also Escondido Mutual Water Co. v. Federal Energy Regulatory Comm'n,* 692 F.2d 1223, 1232 (9th Cir.1982).

## B. Grant of Eminent Domain Power

■ In reaching the conclusion that the 1899 Act vests in the Secretary authority to require tribal consent prior to processing of a right-of-way application, we necessarily reject characterization of the 1899 Act as a grant to railroad companies of the power of eminent domain. "Eminent domain is the power of the sovereign to take property for public use without the owner's consent." 1 J. Sackman, *Nichols' The Law of Eminent Domain* § 1.11, at 1–7 (3d ed. 1981). It is well settled that the power of eminent domain may be delegated by Congress to a private corporation. *Custiss v. Georgetown & Alexandria Turnpike Co.,* 10 U.S. (6 Cranch) 232, 3 L.Ed. 209 (1810) (Marshall, C.J.); 1 Nichols, *supra,* at § 3.23, at 3–212. A grant of the power, however, must be conferred "in express terms or by necessary implication." *Western Union Tel. Co. v. Penn R.R. Co.,* 195 U.S. 540, 564–69, 25 S.Ct. 133, 49 L.Ed. 312 (1904); 1 Nichols, *supra,* at § 3.21[4], at 3–60; *accord,* 3 *C. Sands,* Sutherland Statutory Construction § 64.06, at 128 (4th ed. 1974).

Comparison of the 1899 Act with contemporaneous acts held to be eminent domain statutes reveals that the 1899 Act does not contain the language characteristic of a grant of the power of eminent domain. The Act of February 18, 1888, ch. 13, 25 Stat. 35 (held to be a grant of the power of eminent domain in *Noble v. Oklahoma City,* 297 U.S. 481, 490, 56 S.Ct. 562, 566, 80 L.Ed. 816 (1936)), and the Act of March 3, 1899, ch. 453, 30 Stat. 1368 (held to be a grant of the power of eminent domain in *United States v. Ft. Smith & W.R. Co.,* 195 F. 211, 212 (8th Cir.1912), both provide that a named railroad is "invested and empowered with the right of locating, constructing, owning, equipping, operating, using, and maintaining a railway" and "is authorized to take and use" a right-of-way for railway purposes and "to take and use" land for station purposes. Nowhere in the 1899 Act is there language conferring on a railroad the right to condemn or the right to take and use. The operative language of the 1899 Act is the phrase "is granted," which imports not a delegation of the power of eminent domain but rather a direct conveyance, conditioned or not, by Congress or an administrative agency. Thus, the 1899 Act contains no express grant of the power of eminent domain; nor is it necessary to imply such a grant to make the Act effective.

We therefore conclude that the district court erred in holding that the 1899 Act

---

1. The Walker River Paiute Tribe of Nevada is the governing body of the Walker River Indian Reservation. The Tribe is organized pursuant to section 16 of the Indian Reorganization Act, Pub.L. No. 73–383, 48 Stat. 984, 987 (1934) (codified in 25 U.S.C. § 476 (1976)).

was a grant of the power of eminent domain.[2]

### C. Grant *In Praesenti*

█ The district court also held that the 1899 Act was a grant *in praesenti.* We find it unnecessary to resolve that question.[3] The doctrine of *in praesenti* grants was judicially created to establish priorities among rival private claimants to federal lands. A grant *in praesenti* "imports the transfer . . . of a present interest in the lands designated" by the act. *Van Wyck v. Knevals,* 106 U.S. 360, 365, 1 S.Ct. 336, 337, 27 L.Ed. 201 (1882). The words "is hereby granted" are characteristic of an *in praesenti* grant. *Noble v. Oklahoma City, supra,* 297 U.S. at 490–91, 56 S.Ct. at 566. Once the grant is approved by the designated government official, it "relates back to the initiatory right [the date the grantee commenced proceedings to obtain title], and cuts off all claimants whose rights were initiated later." *Stalker v. Oregon Shortline R.R.,* 225 U.S. 142, 149, 32 S.Ct. 636, 638, 56 L.Ed. 1027 (1912); *accord, Van Wyck v. Knevals,* 106 U.S. at 365, 1 S.Ct. at 337. The relation back of title applies only as against other intervening claimants. As against the grantor United States, no vested right arises until the requirements are met and the grant has been approved by the designated official. *Stalker v. Oregon Shortline R.R.,* 225 U.S. at 149, 32 S.Ct. at 638; *Shepley v. Cowan,* 91 U.S. 330, 338, 23 L.Ed. 424 (1876).

█ Nothing in this scheme of *in praesenti* grants, nor in its purpose of protecting grantees against intervening private claims, necessarily limits the right of the grantor United States to condition the grant. It is true that in the typical *in praesenti* grant, the determination of the Secretary that the grantee has complied with the conditions of the grant is a ministerial function. Neither authority nor logic requires that this be the case, however. We have been shown no sufficient reason to conclude that Congress is unable to vest in an administrative official the authority to establish discretionary conditions with which prospective grantees must comply in order to make the grants effective and trigger the relation back of title. Our examination of section 312 convinces us that Congress has done exactly that. Congress' action is effective whether or not the Act provides for grants *in praesenti.* That is all we need to decide about the meaning of the Act.

**2.** In so holding, we reject two statements of other courts of appeal characterizing the 1899 Act as a grant of eminent domain. *See United States v. Ft. Smith & W.R. Co.,* 195 F. 211, 214 (8th Cir.1912); *Clarke v. Boysen,* 39 F.2d 800, 814 (10th Cir.), *cert. denied,* 282 U.S. 869, 51 S.Ct. 75, 75 L.Ed. 768 (1930). Those statements, relied on by the district court here, were neither well considered nor necessary to the decisions in which they appeared. *Ft. Smith* arose under a different statute (also passed in 1899), and *Clarke,* in its relevant portions, concerned the question whether the 1899 Act applied to reservation lands previously ceded to the United States.

The district court in the present case also relied on provisions for determining compensation for rights-of-way in the absence of consent, in section 3 of the 1899 Act, 25 U.S.C. § 314 (1976), as well as a footnote in Cohen's Handbook of Indian Law referring to the right of railway companies to condemn Indian land. F. Cohen, *Handbook of Federal Indian Law* 95 n. 76 (1942). Both of these references are to acquisition of rights-of-way over individually allotted lands, not tribal lands such as those involved in the present dispute. The two are not inevitably treated the same. *See Yellowfish v. Stillwater,* 691 F.2d 926 (10th Cir.1982).

**3.** We disagree with the district court's reading of our prior decision, *Southern Pacific I, supra,* as "impliedly recognizing that the [1899] Act is a grant *in praesenti* of a right-of-way . . . ." In *Southern Pacific I* we did not reach the question whether the 1899 Act is a grant *in praesenti.* We did point out that the granting clause of the 1899 Act differed significantly from that of the 1875 Act, a statute previously held to be a grant *in praesenti.* 543 F.2d at 691. We further noted that to qualify as a grantee under the 1899 Act, a railroad must comply with requirements not found in the 1875 Act. *Id.* We then held that Southern Pacific's predecessors did not comply with the compensation requirement of the 1899 Act and, therefore, failed to acquire a right-of-way under that Act. *Id.* at 692–93. To reach that result in *Southern Pacific I,* it was unnecessary for us to decide whether the additional requirements contained in the 1899 Act were consistent with the characteristics of a grant *in praesenti.*

## D. Redelegation of the Secretary's Authority

Southern Pacific contends that if the 1899 Act is construed to authorize the Secretary to establish conditions precedent to the grant of a right-of-way under that Act, the Secretary, by requiring tribal consent under 25 C.F.R. § 161.3(a) (1981), has improperly redelegated that decisional authority to the Indian tribes. We conclude that the challenged redelegation is permissible.

■ Subdelegation of administrative authority to an Indian tribe is analogous to subdelegation to a state or local government. "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory ...; they are 'a separate people' possessing 'the power of regulating their internal and social relations ....'" *United States v. Mazurie,* 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706, 716–17 (1975) (citations omitted). Subdelegation of administrative authority to a sovereign entity is not *per se* improper. *Id.; see United States v. Matherson,* 367 F.Supp. 779, 781–83 (E.D.N.Y. 1973) (upholding regulation issued by Superintendent of Fire Island National Seashore requiring persons seeking to operate motor vehicles on certain national seashore lands to secure first a permit from the local municipality), *aff'd mem.,* 493 F.2d 1399 (2d Cir.1974). Nor must such a subdelegation rest on express statutory authority. *See Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 120–22, 67 S.Ct. 1129, 1134, 91 L.Ed. 1375 (1947); *Tabor v. Joint Bd. for Enrollment of Actuaries,* 566 F.2d 705, 708 n. 5 (D.C.Cir.1977).

■ The regulation at issue is not an abdication of the Secretary's power to administer the 1899 Act but rather an effort by the Secretary to incorporate into the decision-making process the wishes of a body with independent authority over the affected lands. The regulation does not relinquish to a tribe the final authority to approve; it delegates a power to disapprove. *Cf. United States v. Matherson,* 367 F.Supp. at 783 (Superintendent retains ultimate authority to approve permit). More-over, while the local jurisdictions in *Matherson* had no source of power separate from the regulation to control the use of national seashore lands, a tribe has independent authority to regulate the use of its own lands. The Supreme Court has stated that the limitations on Congressional delegation of legislative power are "less stringent in cases where the entity exercising the delegated authority itself possesses independent authority over the subject matter." *United States v. Mazurie,* 419 U.S. at 556–57, 95 S.Ct. at 717 (citation omitted). Applying that principle to the redelegation of legislative authority by an administrative body, we conclude that the redelegation embodies in 25 C.F.R. § 161.3 is not improper.

## III. Conclusion

The Secretary acted within his power in requiring by regulation that tribal consent be obtained for the acquisition of rights-of-way pursuant to the 1899 Act, 25 U.S.C. § 312 (1976). The summary judgment in favor of Southern Pacific is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.