UNITED STATES of America, Appellee,

v.

Spencer Daniel WOUNDED KNEE, Appellant.

UNITED STATES of America, Appellee,

v.

Nathan Alan WITH HORN, Appellant.

Nos. 78–1745, 78–1749.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1979.

Decided April 4, 1979.

Rehearing and Rehearing En Banc Denied May 1, 1979.

Certiorari Denied June 4, 1979. See 99 S.Ct. 2847.

Robert C. Riter, Jr., Riter, Mayer, Hofer & Riter, Pierre, S. D., on brief for appellant, Wounded Knee.

Harold H. Deering, Jr., May, Adam, Gerdes & Thompson, Pierre, S. D., on brief for appellant, With Horn.

David V. Vrooman, Special Asst. U. S. Atty., Sioux Falls, S. D., for appellee; Robert D. Hiaring, U. S. Atty., and Gary G. Colbath, Asst. U. S. Atty., Sioux Falls, S. D., on briefs.

David L. Bergren, Fort Pierre, S. D., filed amicus brief for Crow Creek Sioux Tribe.

Before MATTHES, Senior Circuit Judge, HENLEY, Circuit Judge, and NANGLE, District Judge.*

MATTHES, Senior Circuit Judge.

Defendants Spencer Daniel Wounded Knee and Nathan Alan With Horn were jointly indicted, tried and found guilty of rape in violation of 18 U.S.C. §§ 1153 and 2031.[1] The only contested issue at trial was whether the United States government was vested with jurisdiction. Defendants challenged jurisdiction by pre-trial motions to dismiss. After the motions were denied, the defendants waived their right to a jury trial and agreed to try the case to the district court[2] on stipulated facts. On August 14, 1978, the United States Attorney detailed the evidence which was not controverted by either defendant. After ascertaining that the defendants understood their rights, the district court found each defendant guilty of one count of rape.[3] The defendants, represented by separate counsel appointed at trial, thereafter perfected timely appeals which were properly consolidated for oral argument and submission to this court. The Crow Creek Sioux Tribe filed a brief as amicus curiae urging this court to find that the reservation was not diminished and that the government had jurisdiction to prosecute the defendants. We affirm.

The sole issue raised on appeal is whether the district court erred in denying defendants' motions to dismiss the indictment for lack of subject matter jurisdiction. Before discussing this contention, however, we shall briefly summarize the undisputed facts.

Defendants, both Indians, met Lora J. Conetah at a bar in Fort Thompson, South Dakota, on the evening of September 7, 1977. Ms. Conetah, who was not married to either defendant, voluntarily accompanied them first to a house in the area and later to a small park located near the Big Bend Dam and Reservoir on the Missouri River. It is not necessary to review in detail the incidents which occurred after the parties arrived at this park except to say that a quarrel between defendants and Ms. Conetah escalated into a melee. Immediately thereafter Ms. Conetah was twice forcibly raped by each defendant. She reported these incidents shortly after they occurred. Subsequently, a four-count indictment was filed in the United States District Court for South Dakota.[4]

* The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. Section 1153 provides in pertinent part:
Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

2. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

3. On October 6, 1978, after a presentence report had been obtained, the district court sentenced defendant Nathan Alan With Horn to five years under the provisions of the Youth Corrections Act, 18 U.S.C. §§ 5005 et seq. Defendant Spencer Daniel Wounded Knee was sentenced to six years in prison.

4. The defendants were originally charged with raping Ms. Conetah twice on September 8, 1977. Counts I and III of the indictment each charged defendant Wounded Knee with one rape. Counts II and IV made the same charges against defendant With Horn. The government states in its brief without contradiction that the

Jurisdiction is premised on 18 U.S.C. § 1153 which provides in pertinent part, "Any Indian who commits against the person . . . of another Indian or other person . . . rape [and certain other crimes] . . . *within the Indian country*, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." [emphasis supplied.] Indian country as used in this section is defined by 18 U.S.C. § 1151 as

all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation . . . .

Defendants contend that the situs of the offenses was not within "Indian country" as required by § 1153 and defined in § 1151. Although the defendants concede that the location was once part of the Crow Creek Sioux Indian Reservation and, therefore, "Indian country," they submit that this land was removed from reservation status by the Act of October 3, 1962, P.L. 87–735, 76 Stat. 704, hereafter "the Act." Consequently, they argue that because the Crow Creek Sioux Reservation had been diminished by the taking of that part of the reservation where the offenses occurred for the construction of the Big Bend Dam and Reservoir project, subject matter jurisdiction over the offenses was vested in the State of South Dakota. Although it is undisputed that the park was within the land taken for the project and that title in the land was transferred from the Indians to the United States, the government contends that the Act did not diminish the reservation and that it was vested with jurisdiction to prosecute the defendants.[5] The government has conceded, however, that, if the reservation has been diminished so that the situs of the offenses is no longer a part of the reservation, the district court did not have subject matter jurisdiction.

Our analysis of the positions of the litigants leads us to conclude that the major source of controversy revolves around the omission of the two vitally important words "as diminished" from the Act involved in this prosecution (P.L. 87–735). Each of the acts authorizing the taking of Indian land for the construction of projects on the Missouri River antedating the Big Bend Dam and Reservoir project contained this crucial phrase "as diminished."

Section 11 of the Act of September 3, 1954, P.L. 83–776, 68 Stat. 1191, taking land from the Cheyenne River Reservation for the Oahe Dam and Reservation project provides in pertinent part:

The lands so selected and purchased as substitute allotments may be either within the boundaries of the Cheyenne River Reservation *as diminished* by this agreement or outside said reservation as may meet the desires of the individuals involved in the several transactions . . . . [emphasis supplied.]

Likewise, the equivalent section of the Act of September 2, 1958, P.L. 85–915, 72 Stat. 1762, affecting the Standing Rock Sioux Reservation and dealing with the Oahe Dam and Reservoir project provides in pertinent part:

Sec. 11. . . . The land selected by and purchased for individual Indians may be either inside or outside the boundaries of the Standing Rock Sioux Reservation *as diminished.* [emphasis supplied.]

---

second count of rape against each defendant (i. e. Counts II and IV) was dismissed.

**5.** The defendants do not contend that the mere fact that title to the land passed from the Indians to the United States will, without more, require us to find that the reservation was diminished. As the government points out, the United States and other non-Indians often hold title to lands within a reservation. *See Seymour v. Superintendent*, 368 U.S. 351, 357–58, 82

S.Ct. 424, 7 L.Ed.2d 346 (1962) "The determination of whether lands are considered 'Indian Country' does not turn on the label used in designating them . . . . Rather the test is whether such lands have been set apart for the use, occupancy and protection of dependent Indian peoples." [citations omitted.] *Youngbear v. Brewer*, 415 F.Supp. 807, 809 (N.D.Iowa 1976), *aff'd*, 549 F.2d 74 (8th Cir. 1977).

Two acts approved September 2, 1958, P.L. 85–916, 72 Stat. 1766, and P.L. 85–923, 72 Stat. 1773, which took land from the Crow Creek Sioux Reservation and the Lower Brule Sioux Reservation respectively, for the Fort Randall Dam and Reservoir project contain identical language in § 6:

> The land selected by and purchased for individual Indians may be either inside or outside the boundaries of the reservation *as diminished.* [emphasis supplied.]

Significantly, as we have stated, this same phrase is not found in the equivalent section of the Act of October 3, 1962, P.L. 87–735, 76 Stat. 704, which provides in pertinent part:

> The land selected by and purchased for individual Indians may be either inside or outside the boundaries of the reservation.[6]

The defendants propound the ingenious argument that because all of these acts, including the Act under scrutiny here (P.L. 87–735), were enacted as part of a comprehensive program of flood control on the Missouri River authorized by the Flood Control Act of December 22, 1944, ch. 204, 58 Stat. 887, Congress must have intended to treat the Indian tribes affected and the land taken by each act in the same manner. Therefore, they assert because Congress manifested an intent to diminish the reservations by the earlier acts, it must logically have also intended to diminish the Crow Creek Sioux Reservation by the Act involved here. Defendants would attribute the absence of the phrase "as diminished" in the Act to oversight or clerical error.

The government interprets this omission in a different fashion. It argues that because the absence of the phrase "as diminished" is the one major difference between the Act taking land in the Crow Creek Sioux Reservation for the Big Bend Dam and Reservoir project and the earlier acts, this omission must be the key to the meaning of the Act, *i. e.* the similarities of the acts in other respects emphasize this one major difference. If Congress used express language of diminishment in the other acts when it intended to diminish an Indian reservation, the government argues, the fact that it failed to include such express language in an Act (*i. e.* P.L. 87–735) patterned on these earlier acts must mean that Congress did not intend to diminish the reservation affected by that Act.

In determining whether the Act has effected a diminishment of the Crow Creek Sioux Reservation, we are guided by a number of well-established legal principles:

The underlying premise is that congressional intent will control. *DeCoteau v. District County Court, supra,* [420 U.S. 425 (1975)] at 444, 449 [95 S.Ct. 1082, 43 L.Ed.2d 300]; *United States v. Celestine,* 215 U.S. 278, 285, [30 S.Ct. 93, 54 L.Ed. 195] (1909). In determining this intent, we are cautioned to follow "the general rule that '[d]oubtful expressions are to be resolved in favor of the weak and defenseless people who are the wards of the nation, dependent upon its protection and good faith.'" *McClanahan v. Arizona State Tax Comm'n.,* 411 U.S. 164, 174, [93 S.Ct. 1257, 36 L.Ed.2d 129] (1973), quoting *Carpenter v. Shaw,* 280 U.S. 363, 367, [50 S.Ct. 121, 74 L.Ed. 478] (1930); see also *Mattz v. Arnett, supra,* [412 U.S. 481 (1973)] at 505, [93 S.Ct. 2245, 37 L.Ed.2d 92]. The mere fact that a reservation has been opened to settlement does not necessarily mean that the opened area has lost its reservation status. *Mattz v. Arnett, supra* ; see also *Seymour v. Superintendent,* 368 U.S. 351, [82 S.Ct. 424, 7 L.Ed.2d 346] (1962). But the "general rule" does not command a determination that reservation status survives in the face of congressionally manifested intent to the contrary. *DeCoteau v. District County Court, supra.* In all cases, "the face of the Act," the "surrounding circumstanc-

---

**6.** We also note that § 11 of the Act of October 3, 1962, P.L. 87–734, 76 Stat. 698, which took land in the Lower Brule Sioux Reservation for the Big Bend Dam and Reservoir project did not contain the phrase "as diminished:"

> The land selected by and purchased for individual Indians may be either inside or outside the boundaries of the reservation.

es," and the "legislative history," are to be examined with an eye toward determining what congressional intent was. *Mattz v. Arnett, supra,* [412 U.S.] at 505, [93 S.Ct. 2245].

*Rosebud Sioux Tribe v. Kneip,* 430 U.S. 584, 586–87, 97 S.Ct. 1361, 1363, 51 L.Ed.2d 660 (1977). As this court aptly noted in *Rosebud Sioux Tribe v. Kneip,* 521 F.2d 87, 91 (8th Cir. 1975), *aff'd,* 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977), our inquiry into the intent of Congress "may encompass all materials reasonably pertinent to the legislation, including the debates thereon and official correspondence with respect thereto, and administrative treatment of the area; as well as those bearing upon the historical context of its passage . . . ." [footnotes omitted.] Nevertheless, we are cautioned by the words of the Supreme Court in interpreting a statute in a different area of the law: "[O]ur problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort." *62 Cases of Jam v. United States,* 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951). This admonishment reminds us that our function is to interpret, not to engage in legislating unless of course there is a palpable omission of a word or phrase which is necessary to prevent legislative purpose from failing in one of its material aspects. *See and cf. Arkansas Valley Industries, Inc. v. Freeman,* 415 F.2d 713, 717–18 (8th Cir. 1969); *Hatfried, Inc. v. Commissioner of Internal Revenue,* 162 F.2d 628, 631 (3d Cir. 1947); *Elizabeth Arden Sales Corp. v. Gus Blass Co.,* 150 F.2d 988, 993 (8th Cir.), *cert. denied,* 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467 (1945).

 Bearing these precepts in mind, we are constrained to agree with the government's arguments and with the district court which stated in its unpublished memorandum opinion:

> As the Supreme Court noted in *Rosebud,* we are not free to say to Congress:

"We see what you are driving at, but you have not said it, and therefore we shall go on as before." *Rosebud Sioux Tribe v. Kneip, supra,* quoting *Johnson v. United States,* 163 F. 30, 32 (1st Cir. 1908). When we can *not* see what Congress is driving at, however, it would seem to be a usurpation of legislative authority to say that Congress *must* have meant thus and so; therefore, we will simply plug the missing words into the Act. As we said at the beginning of this opinion, case law states that diminishment of a reservation must be shown to have been the clear intent of Congress before the courts will rule that diminishment has taken place. In this case, no matter how "logical" diminishment would appear to be, we find only vague hints but no clear intent from Congress. [emphasis in original.]

*United States v. Nathan Alan With Horn and Spencer Daniel Wounded Knee,* No. CR77–30080 at 6–7 (D.S.D. filed April 14, 1978).

We are not free to speculate that the words "as diminished" were inadvertently omitted from the Act which authorized the Big Bend Dam and Reservoir taking. The bill which eventually became P.L. 87–735 was processed through the usual legislative channels. It was referred to the House Committee on Interior and Insular Affairs which studied the bill and received the views of various government agencies and officials including the Secretary of the Interior and officers of the Army Corps of Engineers. After being amended, the bill was reported to the full House of Representatives which passed and sent it to the Senate.. A similar procedure was followed in the Senate. In due course the bill reached the President who signed it into law. Absent some strong indicia we must not assume that Congress carelessly or inadvertently omitted the critical words which it had included in similar previous acts with no intention or awareness that such an omission would result in any consequences.[7] Defendants strenuously argue

---

7. We recognize that it is not essential that the term "diminished" be employed to remove land from reservation status. "Precise verbal formulae of extinguishment or alteration of

that there was simply no reason for Congress to treat the Crow Creek Sioux Reservation differently in this instance than it had treated other reservations in previous acts where Congress did explicitly diminish the reservations. In particular, the defendants point to the Act of September 2, 1958, P.L. 85–916, 72 Stat. 1766, which took land from the Crow Creek Sioux Reservation for the Fort Randall Dam and Reservoir project. As set out above, this act did contain the phrase "as diminished" and did thereby diminish the Crow Creek Sioux Reservation.[8] Although we agree that there are many similarities between the two projects and the two acts, we believe that Congress may indeed have intended to diminish the Crow Creek Sioux Reservation by the Fort Randall taking while forbearing to do so by the Big Bend taking. An examination of a map of the Big Bend Dam and Reservoir area prepared by the Army Corps of Engineers and introduced as an exhibit in this case reveals that although the Big Bend and Fort Randall takings overlap, the area taken for the Big Bend project extends much further north from the Missouri River and is more expansive than the area taken for the Fort Randall project. Congress was aware that the Big Bend project would take a large quantity of valuable bottom land from the Crow Creek Sioux Tribe. A sub-

stantial number of the Indians on the reservation lived near the river. Moreover, this land supplied an extensive amount of the tribe's firewood and building materials and was the location of the prime grazing and hunting land on the reservation. In short, the land taken by the project constituted an important source of livelihood for the Indians living on the reservation. See H.R.Rep. No.853, 87th Cong., 1st Sess. 10 (1961). In contrast, the map indicates that the Fort Randall taking area within the Crow Creek Sioux Reservation consisted of a relatively narrow strip of land along the Missouri River.[9]

The jurisdictional history of the land within the Crow Creek Sioux Reservation which was taken for the Big Bend project also militates against a finding of diminishment. The amicus curiae brief of the Crow Creek Sioux Tribe states without contradiction that the tribe has provided the sole regulation of Indians and non-Indians within the taking area since the construction of the dam. The tribe further states that it alone has provided fire and police protection to the area and that the Army Crops of Engineers has consistently refused to control or assist the tribe in controlling this area. Defendants do not dispute these as-

boundaries, however apt or helpful, are not a *sine qua non* of disestablishment. We seek, as we said, the congressional intent, which may be variously expressed." *Rosebud Sioux Tribe v. Kneip*, 521 F.2d 87, 90 (8th Cir. 1975), aff'd, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977).

In this case we are not basing our ultimate conclusion entirely on the omission of the words "as diminished" from P.L. 87–735. Rather, we believe that the omission of these words is one important factor to be considered in our attempt to determine the intent of Congress. We have considered all of the factors mandated by the Supreme Court in *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977) and the cases cited therein, and the totality of the circumstances compels us to conclude that the Crow Creek Sioux Reservation was not diminished by the Big Bend taking.

8. The parties have assumed here and in the district court that P.L. 85–916 diminished the Crow Creek Sioux Reservation by taking a strip of land along the Missouri River for the

Fort Randall Dam and Reservoir project. Although the taking areas for the Fort Randall and Big Bend projects overlap, the situs of the offenses in this case was within the taking area for the Big Bend project and outside that for the Fort Randall project. Therefore, our purpose is merely to compare and contrast the earlier acts with P.L. 87–735 in an attempt to divine the intent of Congress with regard to P.L. 87–735.

9. The government argues that the land for the Big Bend Dam and Reservoir project was taken by metes and bounds. If the defendants are correct in their position that this area is subject to the jurisdiction of South Dakota, the government contends that it would be necessary to conduct a survey in order to determine proper jurisdiction whenever an offense was committed near the taking line. Moreover, the government contends that this would lead to what it terms "checkerboard jurisdiction" which is wholly incompatible with common logic and the orderly administration of justice.

sertions. Thus, it appears that the federal and state governments have recognized, at least tacitly, that the land within the taking area remained within the reservation.

██ Finally, we note that both parties attempt to bolster their arguments with items from the legislative history. No purpose would be served by taking up these arguments and the supporting statements from the documents individually. We have made a careful and independent examination of the legislative history of P.L. 87–735 and while there are a few stray phrases which could be interpreted as indicating both the presence and the absence of diminishment, we are mindful that "[a] congressional determination to terminate must be expressed on the face of the Act *or be clear from the surrounding circumstances and legislative history.*" *Mattz v. Arnett,* 412 U.S. at 505, 93 S.Ct. at 2258. [emphasis supplied.] There is simply nothing in the legislative history which satisfies this requirement.[10]

██ In summary, after considering all relevant factors as outlined by the Supreme Court in *Rosebud Sioux Tribe v. Kneip,* 430 U.S. at 586–87, 97 S.Ct. 1361, and particularly bearing in mind that doubtful expressions are to be resolved in favor of the Indians and against diminishment, *id.,* we are satisfied that Congress in enacting P.L. 87–735, did not diminish the Crow Creek Sioux Reservation to the extent of the area taken for the Big Bend Dam and Reservoir project. Accordingly, we hold that inasmuch as the offenses were committed on the reservation and within "Indian country," subject matter jurisdiction was properly vested in the United States.

Affirmed.

---

10. We note by way of example that the section-by-section analysis of H.R. 5165 [which later was enacted as P.L. 87–735] by the House Committee on Interior and Insular Affairs states that the bill directs the Secretary of the Army to "mark the boundaries of the Fort Randall and Big Bend projects *on the reservation.*" [emphasis supplied.] H.R.Rep.No.853, 87th Cong., 1st Sess. 13–14 (1961). This requirement was deleted before passage.

In contrast, a letter dated May 19, 1961, from James K. Carr, Under Secretary of the Interior to Representative Wayne C. Aspinall, Chairman of the Committee on Interior and Insular Affairs, speaks of "[m]arking the boundary *between* the reservation and Fort Randall and Big Bend projects." [emphasis supplied.] *Id.* at 20. This same letter mentions the right of the tribe to use "all land between the shoreline and "the exterior boundary of both the Big Bend and Fort Randall projects *within the reservation*" for grazing. [emphasis supplied.] *Id.* at 21.