707 F.2d 1072
 YAVAPAI-PRESCOTT INDIAN TRIBE, Plaintiff/Counterdefendant/Appellee,
v.
James G. WATT, as Secretary of the Interior, et al., Defendants,
and
Marlin D. Kuykendall, an individual,
Defendant/Counterclaimant/Appellant.
 No. 82-5405.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 12, 1983.
Decided June 8, 1983.
 
 Philip E. Toci, Prescott, Ariz., for plaintiff/counterdefendant/appellee.
 Thomas J. Reilly, Snell & Wilmer, Phoenix, Ariz., for defendant/counterclaimant/appellant.
 Appeal from the United States District Court for the District of Arizona.
 Before DUNIWAY, GOODWIN and SNEED, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Federal law requires the approval of the Secretary of the Interior before certain Indian lands can be leased. This case raises the question whether an Indian Tribe has the authority to terminate a lease executed in accordance with this law without obtaining the Secretary's approval for the lease termination. The district court held that a tribe has that authority. We disagree and reverse the judgment of the district court and remand for further proceedings as are consistent with this opinion.
 
 I.
 FACTS
 
 2
 On September 11, 1969, the Yavapai-Prescott Indian Tribe leased a tract of land in Prescott, Arizona to appellant Marlin D. Kuykendall for use as an automobile dealership. The term of the lease was for 25 years with an option to renew for an additional 25 years.
 
 
 3
 The Tribe obtained the approval of the Secretary of the Interior for the lease pursuant to 25 U.S.C. Sec. 415, authorizing commercial leases of Indian lands, as implemented by 25 C.F.R. Secs. 162.1-162.20.[1] That statute requires that any lease of certain Indian lands be approved by the Secretary, and "be made under such terms and regulations as may be prescribed by the Secretary."[2]
 
 
 4
 One of the implementing regulations, 25 C.F.R. Sec. 162.14, establishes procedures, in the event of a breach of a lease agreement, for the Secretary to participate in the cancellation of the lease.[3] Despite the requirements of this regulation, article 30 of the lease--providing remedies to the Tribe in the event of Kuykendall's default on his lease obligations--states that the Tribe "and/or" the Secretary may terminate the lease.
 
 
 5
 In March of 1979, Kuykendall arranged to sublet the land and sell his dealership to a partnership. The Tribe disapproved of the sublease and notified Kuykendall that the sublease was a breach of the lease agreement. On June 27, 1979, the Tribe terminated the lease without the Secretary's approval.
 
 
 6
 Following termination of the lease, Kuykendall sought assistance from the Area Director of the Bureau of Indian Affairs. Kuykendall claimed that the Tribe was precluded from cancelling the lease without first obtaining the approval of the Secretary of the Interior. The Area Director, however, upheld the Tribe's authority to terminate the lease unilaterally.
 
 
 7
 Kuykendall filed an administrative appeal with the Interior Board of Indian Appeals. The Board held that the Secretary owes a fiduciary duty to the Tribe under 25 U.S.C. Sec. 415 in administering the lease, and that neither the language of the lease nor the conduct of the parties indicates an intent to end the Secretary's fiduciary duty in the event of Kuykendall's default on the lease. The Board explained that the statutory duty, as interpreted by the regulations, could not be abrogated merely by the approval of a lease containing a provision to the contrary. The Board concluded that 25 C.F.R. Sec. 162.14, promulgated pursuant to 25 U.S.C. Sec. 415, and requiring Secretarial involvement in lease cancellations, provides the exclusive method by which the Tribe can terminate a lease. The Board then set aside the determination of the Area Director and reinstated the lease subject to a decision by the Area Director on the merits of the lease cancellation.
 
 
 8
 The Tribe filed this action in the district court pursuant to the Administrative Procedure Act, for review of and relief from the Board's decision. Kuykendall counterclaimed, seeking declaratory and monetary relief on the merits.
 
 
 9
 The district court held that the Tribe could cancel a lease without the Secretary's approval. The court pointed out that 25 C.F.R. Sec. 162.14 does not state expressly that it provides the exclusive procedure for cancellation of a lease of Indian land. The district court then determined that since the Secretary had approved the lease, including article 30, the Tribe could enforce its unilateral cancellation. The district court therefore reversed the decision of the Board, 528 F.Supp. 695, and subsequently dismissed Kuykendall's counterclaim without comment. For the reasons set forth below, we reverse the district court and reinstate the Board's decision.[4]
 
 II.
 ANALYSIS
 
 10
 While 25 C.F.R. Sec. 162.14 does not expressly require that its procedures be followed when a lease approved by the Secretary is terminated, see note 3 supra, a literal reading of the regulation is not enough. Whether the remedies provided in the regulation are exclusive must be determined in light of the intent of Congress in enacting the statute which the regulation purports to implement. See Loma Linda University v. Schweiker, 705 F.2d 1123, 1126 (9th Cir.1983); see also Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971).
 
 
 11
 Congress adopted section 415 to encourage long-term commercial leases of Indian land and thereby to enhance its profitable development. H.R.Rep. No. 1093, 84th Cong., 1st Sess. 1, reprinted in 1955 U.S.Code Cong. & Admin.News 2691. Since the enactment of section 415, business leases have become, as Congress hoped, an important source of income for Indians, and can be called the "cornerstone of a reservation economic development program." Chambers & Price, Regulating Sovereignty: Secretarial Discretion and the Leasing of Indian Lands, 26 Stan.L.Rev. 1061, 1063 (1974). The issue, when viewed in the light of this congressional purpose, becomes whether recognizing a power in a tribe to terminate unilaterally a commercial lease will enhance the profitable development of Indian land.
 
 
 12
 A simple and unqualified answer does not exist. Recognition of such power would increase the economic power of the tribes with respect to unfavorable commercial leases. By termination, when permitted by the lease terms, or its threat, tribes would have greater power to eliminate the unfavorable aspects of commercial leases. No longer would the exercise of this power be subject to approval of the Secretary.
 
 
 13
 On the other hand, elimination of the Secretary's approval also increases the risk of there being lease terms not consistent with the long-run interests of the tribes. The magnitude of this risk is impossible to measure, but the enactment of 25 U.S.C. Sec. 415 attests that Congress believed it existed. 25 C.F.R. Sec. 162.14 indicates that the Secretary quite properly also believes it exists.
 
 
 14
 It is difficult to be certain about how the balance should be struck between the risk of improvidence and the enhancement of tribal power. However, we choose to reduce the risk--a cautious approach admittedly. To some extent our level of anxiety is less than it otherwise might be because, whatever our choice, it lies within the power of the Secretary to set aside our choice at least with respect to the future. Were we to enhance tribal power by recognizing under the circumstances of this case the power of the Tribe to terminate the lease unilaterally, it is likely that the Secretary could nullify the effect of our decision by henceforth approving only leases that required his approval for termination. On the other hand, following our decision in this case the Secretary could abandon his position by changing the regulation to recognize to the extent desired the unilateral power of a tribe to terminate a commercial lease. We believe it is more consistent with the judicial process to accept the Secretary's present choice with respect to the proper balance between enhanced tribal power and increased risks of improvidence and to leave to that office the task of altering that choice. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Southern Pacific Transportation Co. v. Watt, 700 F.2d 550, 552 (9th Cir.1983).
 
 
 15
 Two additional considerations have influenced our decision. The first of these is that to recognize the power the Tribe here asserts would create the possibility of an impasse between the Secretary and a unilaterally terminating tribe. The Tribe could insist upon new terms in any new lease which the Secretary might not be inclined to approve. This possibility is eliminated by the course we have chosen. It is revealing that here the Tribe argues that the Secretary must approve any lease that is beneficial to the Tribe following termination.
 
 
 16
 The second consideration is that possession by a tribe of a unilateral power to terminate will tend to depress the value of the lease to the lessee and discourage the erection of substantial improvements on the leasehold. This could reduce the return to tribes from long-term commercial leases. Lessees confronted with tribal termination would not be able to proceed against the Tribe or invoke an administrative remedy. The Secretary's assumed lack of authority over terminations eliminates the administrative remedy while the sovereign immunity of the tribes bars relief against the Tribe. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); Ramey Construction Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 320 n. 5 (10th Cir.1982); see also Colliflower v. Garland, 342 F.2d 369 (9th Cir.1965); O. Olney & D. Getches, Indian Courts and the Future (1978). It is doubtful that lessees will be able to purchase sufficient immunity from terminations to enable the tribes, in a sense, "to capitalize" the value of their termination power by insisting upon a lease bonus as the price of its surrender. Should this be true it is likely that commercial leases will yield a lower return to the tribes.
 
 
 17
 Finally, we are not persuaded to abandon our cautious approach merely because the lease before us states the Tribe "and/or" the Secretary may terminate the lease. The Secretary did not read this clause as the Tribe suggests, nor do we.[5] The issue before us is too important to permit it to turn on what is at best an awkward, albeit sometimes useful, expression.
 
 
 18
 REVERSED and REMANDED.
 
 
 
 [1]
 These regulations were previously designated 25 C.F.R. Secs. 131.1-131.20
 
 
 [2]
 25 U.S.C. Sec. 415 provides, in part, that:
 Any restricted Indian lands, ... tribally ... owned, may be leased by the Indian owners, with the approval of the Secretary of the Interior, for ... business purposes, ... as determined by said Secretary. All leases so granted shall be for a term of not to exceed twenty-five years, except leases of land ... on the ... Yavapai-Prescott Community Reservation ... which may be for a term of not to exceed ninety-nine years .... Leases for ... business purposes ... may include provisions authorizing their renewal for one additional term of not to exceed twenty-five years, and all leases and renewals shall be made under such terms and regulations as may be prescribed by the Secretary of the Interior.
 
 
 [3]
 25 C.F.R. Sec. 162.14 states, in part:
 Upon a showing satisfactory to the Secretary that there has been a violation of the lease or the regulations in this part, the lessee shall be served with written notice setting forth in detail the nature of the alleged violation and allowing him ten days from the date of receipt of notice in which to show cause why the lease should not be cancelled. The surety or sureties shall be sent a copy of each such notice. If within the ten-day period, it is determined that the breach may be corrected and the lessee agrees to take the necessary corrective measures, he will be given an opportunity to carry out such measures and shall be given a reasonable time within which to take corrective action to cure the breach. If the lessee fails within such reasonable time to correct the breach or to furnish satisfactory reasons why the lease should not be cancelled, the lessee shall forthwith be notified in writing of the cancellation of the lease and demands shall be made for payment of all obligations and for possession of the premises. The notice of cancellation shall inform the lessee of his right to appeal pursuant to Part 2 of this chapter. Where breach of contract can be satisfied by the payment of damages, the Secretary may approve the damage settlement between the parties to the lease, or where the Secretary has granted the lease, he may accept the damage settlement.
 
 
 [4]
 Kuykendall also appeals the dismissal of his amended counterclaims, one of which seeks a declaratory judgment that even if the Tribe were to have the authority to cancel the lease, its attempt to do so here would be ineffective. Since we hold that the Tribe does not have the authority to cancel the lease unilaterally, we do not reach these issues, but leave them for the consideration of the appropriate forum on remand
 
 
 [5]
 The Tribe argues here that, by approving the lease with Kuykendall, including article 30, the Secretary authorized suspension of the procedures required by 25 C.F.R. Sec. 162.14. We disagree. Even assuming that the Secretary tacitly approved such a suspension--which did not occur--an agency normally is bound by its own regulations. Vitarelli v. Seaton, 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959). Moreover, even if the Secretary or an agent empowered by him could suspend this regulation, the lease at issue here was approved not by the Secretary, but by the Superintendent of the Truxton Canyon Agency of the Bureau of Indian Affairs, who has no such power. The cases on which the Tribe relies, see Chisholm v. House, 160 F.2d 632, 642 (10th Cir.1947); Hallam v. Commerce Mining and Royalty Co., 49 F.2d 103, 108 (10th Cir.), cert. denied, 284 U.S. 643, 52 S.Ct. 23, 76 L.Ed. 547 (1931); Whitebird v. Eagle-Picher Co., 258 F.Supp. 308, 311 (N.D.Okl.1966), aff'd on other grounds, 390 F.2d 831 (10th Cir.1968), involve express Secretarial approval for a suspension of Department of Interior regulations. There was no similar approval here