**QUANTUM EXPLORATION, INC.,
Plaintiff-Appellant,**

v.

**William CLARK, Secretary, United
States Department of the Interior,
Defendant-Appellee.**

**No. 84–4406.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1985.

Decided Jan. 21, 1986.

Daniel H. Israel, Cogswell & Wehrle, Denver, Colo., for plaintiff-appellant.

Robert L. Klarquist, Jacques B. Gelin, Dept. of Justice, Appellate Section, Washington, D.C., for defendant-appellee.

Before CHOY, SNEED and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge.

Quantum Exploration, Inc., ("Quantum") appeals the district court's order dismissing its complaint for lack of standing. Quantum sought a decision that would bind the Blackfeet Indian Tribe to a mineral development agreement between Quantum and the Tribe. Additionally, Quantum requested a writ of mandamus pursuant to the Indian Mineral Development Act to compel the Secretary of the Interior ("Secretary") to approve or disapprove the agreement and to promulgate rules and regulations establishing a deadline before which the Secretary must begin compliance with the National Environmental Policy Act ("NEPA"). We affirm, albeit for reasons other than those set forth by the district court. The court may affirm on any ground finding support in the record. *Salmeron v. United States*, 724 F.2d 1357, 1364 (9th Cir.1983).

## FACTUAL AND PROCEDURAL BACKGROUND

In 1982, Congress passed the Indian Mineral Development Act of 1982 (IMDA). 25 U.S.C. §§ 2101–2108. IMDA was enacted to provide Indian tribes with flexibilty in the development and sale of mineral resources. S.Rep. No. 97–472, 97th Cong.2d Sess. 2 (1982). Foremost among the beneficial effects of IMDA was the opportunity for Indian tribes to enter into joint venture agreements with mineral developers. The contractual relationships permitted by IMDA were designed to meet two objec-

tives: "first, to further the policy of self-determination and second, to maximize the financial return tribes can expect for their valuable mineral resources." *Id.*

On July 12, 1983, the Blackfeet Tribal Business Council approved a proposed joint venture agreement with Quantum subject to approval by the Secretary. The agreement was submitted to the Secretary after it was amended and approved by the tribe in March of 1984. The agreement allowed Quantum to select a specific amount of acreage of tribal and alloted lands on the Blackfeet Reservation for oil and gas exploration and development.

On August 8, 1984, prior to a decision by the Secretary, the Tribal Business Council issued a resolution rescinding the agreement. The Council found the agreement was not in the best interests of the Blackfeet Tribe. This result was reached after the Council conferred with the Bureau of Indian Affairs ("BIA") concerning contract problems envisioned by that agency.

On November 20, 1984, Quantum initiated the instant action alleging that the Secretary's failure to approve or disapprove the agreement violated IMDA § 2103(a). Quantum also alleged that the involvement of the BIA constituted a violation of IMDA and interfered with Quantum's contractual relations.[1] Quantum sought an injunction barring the Secretary from considering lease proposals of competitors, and a writ of mandamus to compel the Secretary to approve or disapprove the agreement and to comply with NEPA.[2] On November 29, 1984, the district court issued a temporary restraining order against the Secretary.

On December 7, 1984, the district court *sua sponte* dismissed Quantum's complaint, finding that the Secretary was in compliance with IMDA and that Quantum lacked standing to compel the Secretary to promulgate a regulation limiting the ability

---

1. Quantum does not raise the issue of interference with contractual relations on appeal.

2. Neither party contests the fact that the nature of the joint venture agreement required the Secretary to conduct an environmental analysis pursuant to 43 U.S.C. 4332(2)(c).

of the Secretary to delay compliance with NEPA.[3]

We address two issues on appeal:

I. May the Blackfeet Indian Tribe unilaterally rescind a proposed joint venture agreement entered into with a mineral developer before the agreement has been approved or disapproved by the Secretary of the Interior pursuant to IMDA?

II. Did the BIA's consultations with the tribe after the proposed agreement was submitted to the Secretary violate IMDA?

## STANDARD OF REVIEW

■ *De novo* review is appropriate for two reasons. The district court found Quantum lacked standing to bring the instant action and thus determined it was without subject matter jurisdiction. This court reviews *de novo* a district court's determination concerning subject matter jurisdiction. *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1173 (9th Cir.1984). Additionally, the district court's interpretation of IMDA is a question of law subject to *de novo* review. *Southeast Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir.1983). In construing IMDA, we defer to interpretations by the Secretary that are consistent with congressional intent and supported by substantial evidence. *Oregon Dep't of Human Resources v. Dep't of Health & Human Services*, 727 F.2d 1411, 1413 (9th Cir.1983).

## DISCUSSION

I. *Tribal Rescission Prior to the Secretary's Decision.*

■ IMDA requires the Secretary to approve or disapprove all submitted mineral agreements. 25 U.S.C. § 2103(a). No agreement stands submitted to the Secretary awaiting his review if the Tribe has effectively rescinded the agreement in question.

It is Quantum's position that a valid agreement remains before the Secretary abiding its fate. Quantum argues that an effective, binding agreement was formed between itself and the Tribe on March 8, 1984. According to Quantum, the Tribe's August 8, 1984, rescission of the agreement violates the terms of IMDA and existing case law and contravenes general principles of contract law.[4] Contrary to Quantum's assertions, IMDA's provisions and legislative history reveal a congressional intent to accord tribes the right to disentangle themselves from the negotiations and agreements entered into prior to the Secretary's final decision.

The enforceability of IMDA agreements between tribes and mineral developers is entirely dependent on the approval of the Secretary. IMDA states that "[a]ny Indian tribe, *subject to the approval of the Secretary* ... may enter into any joint venture" for the development of mineral resources in which the tribe owns a benefical or restricted interest. 25 U.S.C. § 2102(a) (emphasis added). Typically, language requiring governmental approval of Indian agreements under other statutes has been interpreted to mean that the agreements simply are invalid absent the requisite approval. *See County of Oneida, New York v. Oneida Indian Nation of New York State*, —— U.S. ——, 105 S.Ct. 1245, 1250, 84 L.Ed.2d 169 (1985) (Court found Indians possessed common-law right to sue on land sale agreement which was invalid for lack of proper governmental approval) and *Wis-*

---

**3.** Quantum claims that § 2103(a)(2) allows the Secretary to defer indefinitely rendering a decision regarding submitted agreements when environmental studies are required by NEPA. Section 2103(a)(2) requires the Secretary to approve or disapprove any minerals agreement submitted to him within sixty days after compliance with NEPA. However, the Secretary is under no *express* duty to begin compliance with NEPA. While the effect of § 2103(a)(2) may warrant judicial, congressional or agency atten-

tion, our disposition of the instant action makes our review of the issue unnecessary.

**4.** The Blackfeet Indian Tribe is a federally recognized tribe possessing "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). Consequently, no action for breach of contract may be initiated against the tribe.

*consin Winnebago Business Committee v. Koberstein,* 762 F.2d 613, 615, 619 (7th Cir.1985) (contract with tribe void for failure to obtain the approval of the Department of the Interior).

That secretarial approval is similarly prerequisite under § 2102(a) is evidenced by the statute's legislative history. Perhaps the clearest expression of congressional intent appears in the legislative history analyzing § 2103(c). Under that section, the Secretary must prepare written findings forming the basis of his intent to approve or disapprove a minerals agreement and provide them to the tribe at least thirty days prior to formal approval or disapproval. In its report on the then-pending version of IMDA, the Senate Select Committee on Indian Affairs noted that the purpose for having the Secretary report to the tribe was to ensure "that tribes are fully apprised of the potential risks, as well as potential benefits. Having the opportunity to review the Secretary's findings in advance of a decision, *tribes will have time to reassess and perhaps reconsider before final approval or disapproval.*" S.Rep. No. 97–472, 97th Cong., 2d Sess. 6 (1982) (hereinafter "Senate Report") (emphasis added). *See also id.* at 12. Quantum argues that the legislative history merely recognizes a right for the Indians to "consult" with the Secretary with no possibility to withdraw from the agreement. The plain language of the report, however, shows the converse to be true. The right to "reconsider" clearly indicates that the tribe has the right to rescind the agreement.

This conclusion is buttressed by the fact that congressional reports preceding the enactment of IMDA often classified tribal arrangements with developers merely as "proposed agreements" prior to secretarial approval. *See* H.R.Rep. No. 97–746, 97th Cong., 2d Sess. 5, *reprinted in* 1982 U.S. Code Cong. & Ad.News 3465, 3467 (hereinafter "House Report"); and Senate Report at 10. *See also* Senate Report, at 9 (IMDA allows "any Indian tribe to enter any joint venture agreement ... approved by the Secretary").

Quantum argues that the Tribe is unable to rescind without the Secretary's approval. Quantum relies heavily on our decision in *Yavapai-Prescott Indian Tribe v. Watt,* 707 F.2d 1072 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). The holding of *Yavapai-Prescott* is inapposite. The tribe as lessor in *Yavapai-Prescott* sought unilaterally to terminate a lease alleging that the agreement had been breached. Unlike the instant case, the original lease agreement had received the formal approval of the Secretary and was thus binding.

Of importance to this court in *Yavapai-Prescott* was the consideration that, were the tribe allowed to rescind approved leases without secretarial involvement, lessees would have no available remedy; the tribe is immune from suit and the Secretary's inability to prohibit the termination deprives the lessee of any administrative remedy. 707 F.2d at 1075. Quantum claims it is in the same position as the lessee referred to in *Yavapai-Prescott* because it would have no remedy if the Tribe is allowed to rescind prior to secretarial approval. As noted above, Congress intended to make tribal agreements with developers binding only after official secretarial approval. This being so, until the Secretary approves the agreement Quantum has no remediable claims.

## II. *BIA Advice to the Tribe.*

It is evident in the Tribe's August 8, 1984, resolution rescinding the Quantum agreement, that the BIA had been actively advising the Tribe. The Tribe placed great weight on the Bureau's assessment that the agreement was rife with problems. Quantum argues that the BIA's involvement was not allowed under IMDA and openly violated the Act's provisions vesting the power of official approval or disapproval in the Secretary or his authorized delegate, the Assistant Secretary of the Interior for Indian Affairs.

Under § 2106, upon the request of the Tribe, the Secretary is required to provide assistance "during the negotiation" of min-

eral agreements. This assistance may be rendered by federal officials or independent consultants. Quantum contends that the phrase "during the negotiation" implies that BIA involvement is allowed only prior to the time the tribe and developer sign an agreement. Under Quantum's proposed construction of the term, the Tribe would be barred from consulting with the BIA or other agents of the Secretary from the time the proposed agreement is signed until the Secretary provided the Tribe with his pre-decision findings. Such a narrow interpretation is not required by the language of the provision and is incompatible with the Act's goal of providing the tribes with greater flexibility in entering into joint venture agreements.

The term "negotiation" encompasses the period starting at the time the developer first contacts tribal representatives and continuing until the Secretary renders an official decision. This interpretation is consistent with the Tribe's right to rescind prior to the Secretary's final determination, and favors the tribe by providing additional flexibility.[5]

IMDA's legislative history suggests that the federal government's trust obligations concerning tribal mineral reserves continue under IMDA. This duty to provide advice and assistance runs for the life of the agreement without interruption: "the Secretary of the Interior has an obligation to assist tribes from the very inception of agreements and his responsibility to protect their interests will continue for the duration of the agreement." 128 Cong. Rec. S14196 (daily ed. Dec. 8, 1982)(statement of Sen. Melcher). *See also* Senate Report at 7 (the Secretary shall make available independent expert advice on all phases of mineral development).

The advice offered by the BIA after the proposed agreement was submitted to the Secretary was consistent with the Secretary's duty to assist the Tribe in all stages of the transaction. Authorization for the BIA's consultatations operates independent of the Secretary's duty to formally approve or disapprove.

## CONCLUSION

Under IMDA, the proposed joint venture agreement was unenforceable and, consequently, rescindable by the tribe prior to official approval by the Secretary. Accordingly, the tribe's August 8, 1984, rescission of the Quantum agreement did not violate IMDA.

AFFIRMED.

---

**5.** Statutes enacted for the Indians' benefit should be construed in their favor. *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 152, 102 S.Ct. 894, 909, 71 L.Ed.2d 21 (1982). *See also*

*United States v. Wounded Knee,* 596 F.2d 790, 793 (8th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979).