MEMORANDUM *
Defendant-Appellant Kim Lawson, Jr. appeals the district court’s summary adjudication orders, dated August 7, 2006, and November 30, 2006, and its Findings of Fact and Conclusions of Law and Judgment, dated March 21, 2007, 483 F.Supp.2d 967, in favor of Plaintiff-Appellee United States of America.[1] For the following reasons, we affirm.
1. The district court properly enjoined Lawson’s operation of a waste disposal facility on allotment TM 314, as the land use agreement he formed with the allottees constituted a commercial lease in all but name and lacked the required approval from the Bureau of Indian Affairs. Pursuant to 25 U.S.C. § 415(a) and 25 C.F.R. § 162.104(d), commercial occupation and use of allotted land by anyone other than an allottee requires a BIA-approved lease. See Seva Resorts, Inc. v. Hodel, 876 F.2d 1394, 1397 (9th Cir.1989); see also Brown v. United States, 86 F.3d 1554, 1556 (Fed.Cir.1996). Neither 25 C.F.R. § 162.104(b) nor 25 C.F.R. § 162.103(a)(4) exempts Lawson Enterprises from this requirement, as the entity consists in part of individuals who are not allottees. Undisputed facts establish that Lawson and his brother, in the name of Lawson Enterprises, “possessed” the allotment, exercising control over the entire property by clearing and grading it, making substantial capital investments, and covering it with waste during a span of fourteen years. See, e.g., United States v. 4,432 Mastercases of Cigarettes, More Or Less, 448 F.3d 1168, 1189 (9th Cir.2006) (quoting Black’s Law Dictionary 1201 (8th ed.2004)). Conclusory declarations asserting that the allottees did not convey a possessory interest in the land to Lawson or Lawson Enterprises cannot defeat summary adjudication. Nilsson v. City of Mesa, 503 F.3d 947, 952 n. 2 (9th Cir.2007). In any event, even assuming the allottees were capable of withdrawing their consent to Lawson’s use of the property, revocable permits are likewise subject to BIA approval. See 25 C.F.R. §§ 162.101, 162.103(a), (b).
2. Federal Rule of Civil Procedure 19(a) did not require the district coui’t to join the allottees as necessary parties to this litigation. See Fed. R. Civ. Px'oc. 19(a) (2006). The allottees were prohibited from taking a position contrary to the Government in its suit to void their *217 unsanctioned commercial land use agreement with Lawson, and they are also precluded from relitigating this question in a separate lawsuit. See Heckman v. United States, 224 U.S. 413, 445-46, 32 S.Ct. 424, 56 L.Ed. 820 (1912). Therefore, “complete relief can[ ] be accorded among those already parties” and the allottees’ absence does not subject Lawson or Lawson Enterprises to a “substantial risk of incurring double, multiple, or otherwise inconsistent obligations____” Rule 19(a)(1), (2)(ii). Furthermore, although a court may permit allottees to intervene in appropriate circumstances, see United States v. Truckee-Carson Irrigation Dist., 649 F.2d 1286, 1300-01, 1306-07 & n. 18 (9th Cir.1981), amended by 666 F.2d 351 (9th Cir.1982), aff'd in part and rev’d in pari on other grounds, Nevada v. United States, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), nothing in the record suggests that the allottees attempted to intervene in this action of their own accord.
3. Lawson’s Fifth Amendment challenge to the district court’s order enjoining him from continuing to operate the waste disposal facility absent BIA approval lacks merit. Lawson is neither an allottee nor a contractual party to a valid, BIA-approved lease, so he has no legal entitlement to occupy the allotment and no basis for challenging the constitutionality of an injunction against such occupation. See, e.g., Peterson v. U.S. Dep’t of Interior, 899 F.2d 799, 807 (9th Cir.1990). Nor may Lawson presume to sue on the allottees’ behalf, as he fails to explain why the allot-tees are incapable of asserting their own constitutional rights. See Coal. of Clergy, Lawyers, & Professors v. Bush, 310 F.3d 1153, 1163 (9th Cir.2002).
4. Trial testimony and exhibits admitted into evidence support the district court’s findings of fact and mixed questions of law and fact regarding harm to the Government, public health and the environment, as well as proximate causation. See Harper v. City of Los Angeles, 533 F.3d 1010, 1027 n. 13 (9th Cir.2008); Resource Conservation and Recovery Act (RCRA) § 7003(a), codified as amended at 42 U.S.C. § 6973. In light of these findings and conclusions, the district court did not err in holding Lawson liable to the Government for all cleanup costs up to $42,800,000.00 and liable to the local fire department for $1.8 million in fire response costs.
5. The district court did not err in treating a violation of RCRA § 7003(b) as a strict liability offense and thus disregarding at the liability stage any good-faith efforts on Lawson’s part to comply with the Unilateral Administrative Order (UAO) issued by the Environmental Protection Agency (EPA). Lawson could be — and was — held liable for failing to comply with the UAO, which does not require a mens rea. See RCRA § 7003(b) (“Any person who ... fails ... to comply with [a UAO] may[ ] ... be fined not more than $5,000 for each day in which such ... failure to comply continues.”). In any event, the district court did incorporate Lawson’s good-faith compliance efforts into its penalty calculation, as it only imposed a penalty of $2,000 per day, rather than the statutory maximum of $5,500 to $6,500 per day. See 40 C.F.R. § 19.4 (Table 1). This penalty assessment was not an abuse of the court’s discretion. See, e.g., Tull v. United States, 481 U.S. 412, 427, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).
6. We reject Lawson’s argument that the Government was not in possession of the allotment and thus that one of the elements of a prima facie case for trespass was not met in this case. As the Government holds the allotment in trust for allot-tees, it has the power to control occupancy *218 on the property and to protect it from trespass. See United States v. West, 232 F.2d 694, 698 (9th Cir.1956); see also 25 C.F.R. § 162.106(a); 73B C.J.S. Public Lands § 5.
7. The district court did not abuse its discretion in proceeding with trial as scheduled rather than issuing a continuance order upon discovering mid-way through the first day that Lawson lacked legal representation. Lawson has indicated that he could not afford counsel, so a continuance would have been futile. Nor did Lawson have a constitutional right to legal representation in this case, as he faced no risk of imprisonment. Hernandez v. Whiting, 881 F.2d 768, 770-71 & n. 3 (9th Cir.1989); compare RCRA § 7003(a), (b) with RCRA § 3008(d), codified as amended at 42 U.S.C. § 6928(d).
Furthermore, the district court did not abuse its discretion by failing to make a sua sponte request for pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). See Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir.2009). It was within the district court’s discretion to conclude that this case did not present “exceptional circumstances” justifying a request for pro bono counsel. See United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat County, State of Wash., 795 F.2d 796, 799-800 & n. 8 (9th Cir.1986). In any event, Lawson did not inform the court prior to trial that he had not succeeded in obtaining new counsel, pro bono or otherwise. A mid-trial § 1915(e)(1) request to members of the local bar would have necessitated a continuance, thereby placing a substantial burden on the Government, its witnesses, and the court, so it was within the court’s discretion to proceed with trial. See Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097, 1102 (9th Cir.1998); Muckleshoot Tribe v. Lummi Indian Tribe, 141 F.3d 1355, 1358 (9th Cir.1998).
8. Finally, we note that the Government instigated this suit at the behest of two different federal agencies — the EPA and the BIA — and that it thus represents both the general public and the allottees, whose interests may diverge in some respects. Congress permits the Government to serve dual advocacy roles as environmental steward and allotment trustee, see Nevada, 463 U.S. at 128, 135 n. 14, 103 S.Ct. 2906, but the Government’s focus in this case on the former, with little evident regard for the latter, raises some concern. The statutory scheme governing third-party commercial use of allotted land places the Government, in its capacity as landowner and trustee, in the paternalistic position of sanctioning only those land uses which strike an appropriate balance between economic development for the allot-tees and the impact of that development on the environmental health and safety of the allotment property and surrounding community. See 25 U.S.C. §§ 348, 415(a); Segundo v. City of Rancho Mirage, 813 F.2d 1387, 1393 (9th Cir.1987); Yavapai-Prescott Indian Tribe v. Watt, 707 F.2d 1072, 1074-75 (9th Cir.1983); United States v. S. Pac. Transp. Co., 543 F.2d 676, 698, 699 (9th Cir.1976). In litigating this case, the Government has vigorously pursued its role as advocate for the environment and the general public, and admirably so, but it may have given shorter shrift to its role as representative of the economic interests of the allottees. In fact, nowhere in the record or the Government’s brief is there a discussion of how and whether this litigation serves the allottees’ welfare. We suspect that enjoining further operation of the waste disposal facility and redeveloping the property probably does serve their long-term economic interests, but the Government’s failure to so much as mention its obligation in this regard leaves the impression, right or wrong, *219 that it may have eschewed this duty altogether. Nevertheless, while in different circumstances that might have affected the outcome, in this case we are satisfied that the Government did not act in excess of its authority.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The Ninth Circuit Clerk of Court's April 9, 2008, order granting Kim Lawson, Jr.'s motion to substitute in to this action to represent the estate of his father, Kim Lawson, Sr., who passed away during the pendency of this appeal, was a proper exercise of this court's discretion. See Federal Rule of Appellate Procedure 43(a)(1) (2008); see also Bennett v. Tucker, 827 F.2d 63, 68 (7th Cir.1987). The Government does not contest Kim Lawson, Jr.’s relationship to Kim Lawson, Sr., nor does it propose an alternative candidate for substitution. Kim Lawson, Jr. has standing to prosecute this appeal on behalf of his deceased father’s estate.